EDWARD FOSTER, PLAINTIFF-RESPONDENT, v. WASHINGTON NATIONAL INSURANCE COMPANY, DEFENDANT-APPELLANT.

Submitted October 30, 1936—Decided May 20, 1937.

Before Justices TRENCHARD, BODINE and HEHER.

For the appellant, *Katzenbach, Gildea & Rudner.*

For the respondent, *Charles J. Falcey.*

The opinion of the court was delivered by

HEHER, J. Plaintiff sues upon a policy of insurance in the sum of $276, issued by defendant, on November 14th, 1932, upon the life of his first cousin, Anna Lipshutz. The insured died on August 5th, 1935.

The agreed state of the case discloses that "the policy was payable 'to the executor or administrator of the insured, unless payment be made under the provisions' " of the "facil-

ity of payment" clause therein contained, and that it also "contained a request that, in the event of the death of the insured, the proceeds shall be paid" to plaintiff. No claim is asserted on behalf of a personal representative of the deceased. Finding a mis-statement of the age of the insured (plaintiff does not complain of this), the District Court judge, in accordance with the provisions of the policy, awarded judgment for the amount "the premium would have purchased at the correct age." Defendant appeals.

The first insistence of appellant is that "no application for insurance signed by the insured or by any person duly authorized by her was submitted" to it, and the policy was therefore "void and a complete nullity."

Assuming the legal sufficiency of this proposition, if factually well-founded, there was evidence to support a finding that the application for the policy was in fact signed by the insured. It is certified in the state of the case that appellant's "agent called to see Mrs. Lipshutz [the insured] and obtained her application for a policy of insurance." There were appended to the application what purport to be the insured's mark and the signature of the agent as a witness to the making thereof. And the testimony of the deceased's husband sustains an inference that deceased affixed her mark to this instrument.

Secondly, it is urged that the insured, in the application for insurance, "made material misrepresentations" respecting "other insurance carried by her * * *, medical treatment received by her and ailments suffered by her for a period of five years prior to the making" thereof, and the state of her health "on the date of the policy."

But, at the time of the insured's death, the policy had become "incontestable" within the intendment of section 94 of the act relating to insurance (2 *Comp. Stat.* 1910, *p.* 2868), as amended by chapter 179 of the laws of 1925 (*Pamph. L., p.* 436), providing that no policy such as this shall be issued or delivered within this state, unless it shall contain, *inter alia,* a provision that, "after it has been in force during the lifetime of the insured a specified time, not

later than two years from its date," it "shall be incontestable, except for non-payment of premiums and for violation of its express conditions, if any, relating to hazardous travel, residence or occupation, in which case the liability of the company may be limited to a definitely determinable reduced amount, which shall not be less than the full reserve for the policy and any dividend additions, and except also, at the option of the company, with respect to provisions relative to benefits in the event of total and permanent disability, and provisions which grant additional insurance specifically against death by accident."

Here the policy contained a condition broader than the statutory prescription adverted to, *i. e.,* that it should be incontestable after it had been in force, during the lifetime of the insured, for a period of two years from the date of issue, "except for non-payment of premiums, *fraud* or mis-statement of age;" and appellant argues that the statutory provision constitutes "a mere prohibition against the issuance of a policy containing terms with respect to incontestability otherwise than as set forth in the statutes," and that, since the section "does not declare the legal consequences of the use of any provisions in conflict with the act, the clause in the policy in suit must be declared to be valid." It is pointed out that the act "contains no penalties and does not declare the legal effect of policies issued contrary" thereto; and that, in any event, "the mere fixing of penalties cannot have the legal effect of declaring contracts or parts of contracts void."

We perceive nothing of substance in this contention. The legislative design plainly was to incorporate the statutory incontestability clause (subject only to such curtailment of the prescribed maximum period as may be expressly stipulated) in the contract of the parties. *Hollin* v. *Essex Mutual Benefit Association,* 88 *N. J. L.* 204. The absence of sanctions merely serves to emphasize the legislative purpose that this term, by force of the statute, shall enter into and become a part of the contract. The business of life insurance is affected with a public interest, and is therefore, in the exercise of the police power, subject to reasonable control for the

public good. *McCarter, Attorney-General,* v. *Firemen's Insurance Co.,* 74 *N. J. Eq.* 372; *German Alliance Insurance Co.* v. *Lewis,* 233 *U. S.* 389; 34 *S. Ct.* 612; 58 *L. Ed.* 1011; *National Union Fire Insurance Co.* v. *Wanberg,* 260 *U. S.* 71; 43 *S. Ct.* 32; 67 *L. Ed.* 136; *Whitfield* v. *Aetna Life Insurance Co.,* 205 *U. S.* 489; 27 *S. Ct.* 578; 51 *L. Ed.* 895. The common interest vindicates the incidental restraint upon the liberty of contract. Compare *P. Bronstein & Co.* v. *Hoffman,* 117 *N. J. L.* 500. This alone affords an adequate basis for the legislative prescription of a standard form of insurance policy. But it is also pertinent to observe that there is reserved to the state (by article IV, section 7, paragraph 11 of the state constitution) the power to repeal or alter, at the will of the legislature, the laws creating corporations and conferring corporate powers; and that foreign life insurance companies are, in the exercise of their corporate rights and powers within this state, subject to its legislative powers. *Hooper* v. *California,* 155 *U. S.* 648; 15 *S. Ct.* 207; 39 *L. Ed.* 297; *Norfolk and Western Railroad Co.* v. *Pennsylvania,* 136 *U. S.* 114; 10 *S. Ct.* 958; 34 *L. Ed.* 394.

Public policy will not permit the setting at naught of a statutory provision of this character. An agreement in disregard of the legislative mandate is *ultra vires.* The inclusion of such a term is imperative; and the law therefore treats the contract as embodying the statutory clause, and resolves the apparent conflict in favor of the statute. The inconsistent provisions written in the policy yield to it. There can be no waiver of the statutory condition. The policy of the law forbids it; and the insurer is estopped from asserting it. This is in consonance with the principle of *Hollin* v. *Essex Mutual Benefit Association, supra,* where the instrument executed by the parties did not contain any of the statutory terms. It was there held that these terms were nevertheless a part of the contract, and that their omission from the policy did not render it "illegal or void."

The statutory provision in question is a reasonable exercise of legislative power. It does not operate as an absolute waiver

of all defenses, and thus to condone fraud. Rather it "recognizes fraud and all other defenses," but provides "ample time and opportunity within which they may be, but beyond which they may not be, established. It is in the nature of, and serves a similar purpose as, statutes of limitation and repose, the wisdom of which is apparent to all reasonable minds." *Drews* v. *Metropolitan Life Insurance Co., 79 N. J. L.* 398; *Prudential Insurance Co.* v. *Connallon, 108 N. J. Eq.* 316.

Lastly, it is urged that plaintiff had "no insurable interest in the life of the insured," and, in respect thereof, was guilty of "wagering, speculating and gambling on the life of the insured."

We find in the state of the case a factual basis for the contrary finding in the court below. There was evidence that the insured herself procured the policy, and, in the designation of plaintiff as beneficiary, was moved by kinship and a sense of dependency. The policy was negotiated by defendant's agent, not by plaintiff. The fact that plaintiff paid the premiums thereon is not, under the circumstances disclosed by the state of the case, conclusive of this factual issue. Compare *Howard* v. *Commonwealth Beneficial Association, 98 N. J. L.* 267; *Thomas* v. *National Benefit Association, 84 Id.* 281; *Thomas* v. *National Benefit Association, 81 Id.* 349; *Vivar* v. *Knights of Pythias, 52 Id.* 456.

Judgment affirmed, with costs.