**PEARCE v. FIDELITY MUT. LIFE INS. CO.**

Civ. No. 4839.

District Court, D. New Jersey.

Nov. 16, 1945.

Milton, McNulty & Augelli, of Jersey City, N.J., and Harry A. Walsh, of Trenton, N. J., for plaintiff.

Collins & Corbin and James J. Langan, all of Jersey City, N. J., for defendant.

FORMAN, District Judge.

This action was brought by the plaintiff as beneficiary on a policy of insurance for $10,000 issued October 1, 1940 upon the life of her husband, who died February 24, 1942. Application for the policy was made and the policy delivered in the State of New Jersey.

The complaint herein, filed in the New Jersey Supreme Court and removed to this court for trial by the defendant, alleges, among other things, that the policy which was the subject of suit, had been issued in lieu of a previous policy dated August 27, 1929 under the terms of which the anniversary date of the new policy remained the same as that of the old one—August 27—and the annual premium was payable on that day in each year. The complaint further alleged that on August 27, 1941 there was a default in the payment of the annual premium due on that date but that automatically the insurance should have been continued for such term as the cash value would purchase, a period considerably beyond February 24, 1942, the date of the death of the insured; that at the time the policy lapsed the insured had borrowed upon it from the defendant the sum of $2,279 and since the extended term insurance was in effect as of the time of his death plaintiff was entitled to the face of the policy, less the amount of the loan, for which she sought recovery.

The defendant has moved for a summary judgment in its favor pursuant to No. 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the ground, broadly stated, that the complaint in the light of the admissions and undisputed facts fails to make out a valid claim against it.

Upon the day of its lapse the reserve value of the policy was $2,290. The policy was also entitled to a credit in the sum of $25.60, representing the current dividend upon it, apportioned as of its anniversary date, August 27, 1941, or a total credit of $2,315.60. The debits against the policy consisted of the loan in the amount of $2,150 and accrued interest at 6% from August 27, 1940 to August 27, 1941, in the sum of $129, or a total of $2,279.

Upon the lapse of the policy defendant calculated automatic extended term insurance to be in the sum of $7,721 (the face amount of the policy, of $10,000, less the indebtedness of $2,279). It determined that the cash value of the policy, with which said extended term insurance could be purchased, was $36.60 (the credits of $2,315.60 less the debits of $2,279). It computed the term for which said insurance in the sum of $7,721 could be purchased for $36.60, and arrived at a result of 96 days, which

covered the period from August 27, 1941 to December 1, 1941.

Plaintiff does not dispute any fact contained in the moving papers or pleadings but contends that the defendant having elected to deduct the amount of the loan from the face amount of the policy in reduction of the amount of automatic extended term insurance, is precluded from also deducting the amount of the loan from the cash value of the policy. If only one such deduction is permitted, then plaintiff submits, under this policy there would be the sum of $2,315.60 in reserve and apportioned dividend with which to purchase automatic extended term insurance instead of $36.60 and the policy would have carried far beyond the date of the insured's death—February 24, 1942.

The sole question before us therefore is one of law and resolves itself as follows:

After default in premium on August 27, 1941, was the defendant justified in deducting the indebtedness of the insured from the face of the policy, and from its reserves and apportioned dividend in arriving at the amount of cash value with which to purchase automatic extended term insurance?

The policy contained the following provision:

"After three full years' premium shall have been paid and after default in payment of any subsequent premium, the following provisions shall become operative:

"(a) Extended Term Insurance.—The insurance shall be automatically continued, without the right to dividends or loans, from the due date named herein for the payment of the premium in default, for the face amount of this policy, plus any outstanding paid-up additions, and less the amount of any indebtedness to the Company hereon, and for such a term as the cash value of this policy will purchase at the net single premium rate at the attained age of the insured, according to the American Experience Table of Mortality and interest at 3½%; or

\*   \*   \*   \*   \*   \*

"(c) Cash Value.—Upon surrender and discharge of this policy by all parties in interest not later than sixty days after default in payment of premium, the Company will pay the cash value. The cash value shall be a sum equal to the reserve on this policy on the due date named herein for the payment of the premium in de-

fault (omitting fractions of a dollar per thousand of insurance) plus the reserve on any outstanding paid-up additions and any dividend standing to the credit of this policy, less a surrender charge from the third to the ninth policy years, inclusive, not exceeding 1% of the sum insured and less the amount of any indebtedness to the Company hereon. The reserve shall be computed on the basis of the American Experience Table of Mortality and interest at 3½%. The payment of the cash value may be deferred by the Company for a period not exceeding ninety days after receipt of application therefor."

The New Jersey law regulating the issuance of life insurance policies provides that no policy such as the one in this case shall be issued or delivered within this state to a resident thereof unless it shall contain, among other things, "A provision, which in event of default in premium payments after premiums have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the entire reserve held by the company on the policy, specifying the mortality table and rate of interest adopted for computing the reserve, less a specified percentage, not more than three, of the amount insured by the policy, including dividend additions thereto, if any, and less any outstanding indebtedness to the company on the policy. The specified percentage referred to above need not be stated for the policy years included in the table of surrender values required by this section." N.J.S.A. 17:34–15, subd. g.

■■ The purpose of the statute was to secure to an insured, who has paid premiums for three or more years and then has permitted the policy to lapse for nonpayment of premiums, the automatic right to have purchased for him extended or paid-up insurance. The duration of the term of such insurance is to be determined by the excess of his contributions over the cost and expense properly attributable to the carrying of his insurance to the date of lapse, less any indebtedness to the company. The provision in the policy before us complies in substance with this mandatory statute and its inclusion in the policy was imperative. Foster v. Washington National Insurance Co., 118 N.J.L. 228, 192 A. 59. As directed by the statute, paragraph (c), supra, of the policy provides for the deduction of any outstanding indebtedness due the company in arriving at the cash value

that could be used for the purchase of extended term insurance.

█ When the face amount of the policy was reduced by the indebtedness due the company for the purpose of determining the amount of extended term insurance the indebtedness was not thereby extinguished. The indebtedness was liquidated by charging it against the reserve or cash value. The provision of the policy was designed so that a borrower who defaulted in the payment of premium would not have a greater benefit than one who did not. In each instance the beneficiary receives in settlement the face amount of the policy less any indebtedness due the company.

In Pacific Mut. Life Ins. Co. v. Davin, 4 Cir., 5 F.2d 481, 483, a similar contention was raised. The reasons given by the court are particularly applicable here. It held:

"It is to be remembered that the policy is forfeited for nonpayment of premium, or would be, except for the provision in it with which we are now concerned. In the absence of statute, the parties may agree for whatever grace, be it great or small, the company may be willing to give and the assured is willing to accept. It is a pure matter of contract. Moreover, whether the company shall agree that the extended term insurance shall be for the amount of the face of the policy, or for an amount less than the face, does no harm to the insured. The provision is that he is to get paid-up term insurance for so long as the net amount to the credit of his cash reserve will suffice to pay. That is to say, if the face of his policy was $20,000 and he owed the company $10,000 and the amount to the credit of its cash reserve would presumable buy paid-up term insurance for $20,000 for one-half the time, it would buy it for $10,000, so that whatever the insured lost in the amount of the paid-up policy he gained in the length of time during which it would be in force. * * *"

"It is said, however, that in this way the company received a double payment of its indebtedness: First, by deducting the indebtedness from the cash reserve; and, second, by again deducting it from the face of the policy as has already been pointed out. Deduction from the face of the policy is an altogether immaterial matter, for, as already pointed out, what the insured loses in the amount of the policy he gains in the time for which it is extended. Quite obviously, for the protection of the company, it must deduct any indebtedness due the company from the cash reserve before it can apply the cash reserve to buying extended insurance, for if it did not do so, the insured would get insurance for which he had not paid, and for which if he did not happen to die, within the period of extension, he never would pay and never could be compelled to pay." 5 F.2d at page 484.

The same conclusion was reached in New England Mut. Life Ins. Co. v. Olin, 7 Cir. 114 F.2d 131, certiorari denied 312 U.S. 686, 61 S.Ct. 612, 85 L.Ed. 1123, where the court held: "When, therefore the policy lapsed into extended insurance on September 29, 1931, the indebtedness chargeable against the policy was deductible both from the face of the policy and from the available reserve value. Such a construction of the policy is sound, consistent with settled insurance practices, and manifestly fair to both parties. It gives to the insured what the statute would secure for him, namely, the reserve value. He may borrow it for the payment of premiums (premium loans) or for other purposes (cash loans). He may cause the policy to lapse and apply it to the purchase of extended term or paid-up insurance. He may surrender his policy and claim it in the form of cash surrender value. It is for his benefit, and he may do with it as he wills, but he can not use it up and have it too. In this regard the policy gives to the insurer what the statute would not take from him, namely, protection against paying out the reserves twice." 114 F.2d at page 139.

█ In the present case the cash surrender value at the time the policy lapsed would have been $2,315.60 if there had been no indebtedness. However, the insured then owed the defendant $2,279, leaving as a net value of the policy only $36.60. Had the insured elected them to take the cash surrender value this is the sum which he would have been entitled to receive. Having failed to exercise any option under the policy, the automatic extended term insurance came into force, and this sum then became the factor upon which the term of such insurance should be calculated. To hold otherwise would not only violate the plain and unambiguous term of the policy, but would, in effect, fasten upon the defendant an obligation for extended insurance without premium or

compensation. See Omaha Nat. Bank v. Mutual Ben. Life Ins. Co., 3 Cir., 84 F. 122; Annotations: 113 A.L.R. 606, 23 L. R.A.,N.S., 82, L.R.A.1918A, 906.

The motion of the defendant is granted and judgment should be entered in its favor.