## MILLMAN, INDIVIDUALLY AND AS ASSIGNEE OF JOHN MILLMAN v. METROPOLITAN LIFE INSURANCE COMPANY

[No. 213, September Term, 1967.]

636

*Decided May 3, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, McWILLIAMS and SINGLEY, JJ.

*Richard M. Millman* for appellant.

*Courtland K. Townsend, Jr.,* with whom were *James J. Cromwell* and *Clark & Cromwell,* and *John E. Powell* and *Drury, Lynham & Powell* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

On 25 November 1957, Mrs. Leona E. Millman (the Insured) then a resident of New Jersey, made application to Metropolitan Life Insurance Company (Metropolitan) for a whole life policy in the amount of $5,000.00, with accidental death benefits and waiver of premiums in the event of disability, the initial annual premium to be payable on 24 April 1958, and annually thereafter. Richard Millman and John Millman, sons

of the Insured, were designated as beneficiaries. In her application, the Insured denied any record of illness, answered "No" to· the question, "Have you ever had, been treated for or sought advice concerning * * * any disease or disorder of the heart? * * * any disease or disorder of the liver?" and listed two hospital admissions: an appendectomy in 1928 and childbirth in 1944.

· In her application, the Insured did not disclose that she had suffered from mitral stenosis and an enlarged liver and spleen since 1956, for which she had been hospitalized; and that from 13 March 1957 to 25 March 1957, she had been a patient at New York's Mount Sinai Hospital where an exploratory laparotomy had been performed and a liver and lymph node biopsy had been done.

Metropolitan issued the policy on 24 January 1958; the Insured paid the premiums due on 24 April 1958, 24 April 1959 and 24 April 1960. On 26 September 1960, the Insured made a policy loan, borrowing from the company $263.36, the policy's full value. No premiums were paid after 24 April 1960, and the policy lapsed. The Insured died of liver failure on 20 February 1962.

Following the death of the Insured, claim was made for a waiver of the premium due 24 April 1961, on the theory that the Insured had been totally and permanently disabled since November 1958. Had the beneficiaries been successful in this effort, the policy would have been reinstated and the policy proceeds would have become payable, since the policy contained the usual provision making it incontestable after two years from date of issue, except for nonpayment of premiums.

Metropolitan resisted the claim on the ground that it would not have issued the policy had it been informed of the medical history of the Insured at the time application was made, and relied on the policy provision:

"5. Incontestability.—This Policy shall be incontestable after it has been in force during the lifetime of the Insured for a period of two years from its date of issue, except for non-payment of premiums; provided, however, that any total and permanent disability pro-

vision included in this Policy shall become incontestable two years from its date of issue only if the Insured has not then become totally disabled."

In short, Metropolitan took the position that the commencement of the Insured's disability 10 months after date of issue of the policy prevented the disability provision from becoming incontestable. In rejecting the claim, it returned to the Insured's executor the sum of $15.66, being that portion of the premium attributable to waiver of premium in event of disability.

On 23 February 1965, the Insured's son, Richard M. Millman, in his own behalf, and as assignee of his brother, John Millman, brought suit on the policy in the Circuit Court for Montgomery County. The case was submitted to the court without a jury on a stipulation of facts and was dismissed on 22 June 1967. The present appeal was taken from this order, and from a judgment for costs entered in favor of Metropolitan.

In our opinion, the conclusion reached by the lower court was manifestly correct. The disability provisions of a life insurance policy may be expressly excluded from the operation of the incontestability clause, and in a proper case, an insurer may rescind or cancel the disability features of a policy even although the incontestable period has commenced to run. 29 Am. Jur. *Insurance*, § 380; *Penn Mutual Life Ins. Co. v. Hartle*, 165 Md. 120, 166 A. 614, 91 A.L.R. 1466 (1933); Appleman, *Insurance Law and Practice* (1965) § 336.

The beneficiaries rest their case on two contentions: First, that the incontestability clause of the policy is at variance with the law of New Jersey, where the policy was written. Second, that Metropolitan failed to make a proper tender of premiums and therefore cannot seek rescission. The court below did not find these arguments persuasive, nor do we.

The statutory provision relied on by the appellant is found in New Jersey Statutes Annotated 17: 34-15 (1937):

"On and after January first, one thousand nine hundred and eight, no policy of life insurance shall be issued by any company of this State or be issued or delivered within this State to a resident thereof by any

foreign company, unless it contains provisions as follows:

\* \* \*

"c. That the policy shall constitute the entire contract between the parties and that after it has been in force during the lifetime of the insured a specified time not later than two years from its date, shall be incontestable, except for nonpayment of premiums and for violation of its express conditions, if any, relating to hazardous travel, residence or occupation, in which case the liability of the company may be limited to a definitely determinable reduced amount, which shall not be less than the full reserve for the policy and any dividend additions, *and except also, at the option of the company, with respect to provisions relative to benefits in the event of total and permanent disability,* and provisions which grant additional insurance specifically against death by accident." (Emphasis supplied.)

In our view, the language in the Metropolitan Policy:

"\* \* \* provided, however, that any total and permanent disability provision included in this Policy shall become incontestable two years from its date of issue only if the Insured has not then become totally disabled."

is clearly an exception permitted by the statute. *Foster v. Washington National Ins. Co.,* 118 N.J.L. 228, 192 A. 59 (1937) cited by the appellant, is readily distinguishable, since in that case, the insurer attempted to enlarge the scope of the New Jersey statute by adding fraud or misstatement of age as additional grounds upon which the policy might be contested after the expiration of the two year period.

The appellant's second contention is that the disability feature is not severable from the life feature of the policy, since these are not two contracts, but one, for which a single annual premium of $163.10 was exacted.[1] If rescission is sought, the appel-

---

1. The accidental death premium of $5.70 per year was separately stated.

lant argues, the contract may not be terminated in part, but the entire premium (less the policy loan) must be tendered, and relies on the rule of *Stiegler v. Eureka Life Ins. Co.*, 146 Md. 629, 127 A. 397 (1925) which held that an insurance company seeking rescission must "* * * return, or offer to return the premiums received prior to the asserted election to rescind * * *." What this argument overlooks, however, is that the policy lapsed as a result of the Insured's failure to pay the premium due on 24 April 1961, and that prior to the lapse, the Insured had made a policy loan of $263.36, which the parties stipulated to be the full value of the policy at 24 April 1961. At the time of the death of the Insured, nothing remained: The policy had lapsed, and the full value of the policy had been returned to the Insured. Non-payment of premiums was a defense which would have been available to Metropolitan had a claim been made for the face amount of the policy. By the terms of the contract, the claim for disability benefits was contestable if the disability commenced within two years of the date of issue. When Metropolitan determined to resist this claim, it tendered $15.66, which it computed to be that portion of the total premium collected during the life of the policy which was attributable to the waiver of premium benefit.

It is true, as appellant contends, that there is a clear division of authority as to whether the life and disability features of an insurance contract are severable or divisible, thus permitting a rescission of disability benefits at a time when the life policy is incontestable. *See Stroehmann v. Mutual Life Ins. Co.*, 300 U. S. 435 (1937); *Equitable Life Assur. Soc. v. Deem*, 91 F. 2d 569 (4th Cir. 1937); *Ness v. Mutual Life Ins. Co.*, 70 F. 2d 59 (4th Cir. 1934); *Greber v. Equitable Life Assurance Society*, 28 P. 2d 817 (Ariz. 1934) and the cases collected in Annotations in 94 A.L.R. 1133, 121 A.L.R. 1437 and 147 A.L.R. 1015.

In *Penn Mutual Life Ins. Co. v. Hartle, supra,* this Court dealt with the problem of severability. In 1928, Penn Mutual Life Insurance Company wrote a $5,000 policy on Hartle's life, and by a supplemental agreement, for an additional premium, agreed to waive premiums and to pay Hartle $50 per month in the event of total disability. The contract provided that the life

feature was incontestable after one year but also provided that the disability features were excluded from the incontestability provision. Three years after the policy was issued, Hartle became insane, and the insurer made the disability payments until it discovered that Hartle, prior to the issuance of the policy, had been treated for cerebro-spinal syphilis, which was not disclosed in the policy application. When Penn Mutual sought to rescind the disability coverage, and recover the payments it had made, less the premiums applicable to the disability feature, the argument was made that the policy was not divisible or severable. This Court found no difficulty in disposing of this contention because of the manner in which the policy had been structured: *i.e.,* the inclusion of the disabiilty benefits and the additional premium attributable thereto in a supplement to the life policy. But there is at least an inference in the Court's opinion that severability could have been based on the fact that by the terms of the policy, the life benefits were made incontestable after one year, while the disability benefits remained contestable.

Without intending to indicate what might have been the result in the case before us had the Insurer attempted a rescission of the waiver of premium provision while the life policy was still in force, it is sufficient to point out that we are not here concerned with divisibility or severability. By the time the appellant asserted his claim, nothing remained of the life contract and the only hope of reinstating it lay in invoking the waiver of premium benefit. This was the only problem presented, and the Insurer successfully resisted the claim on the ground that since the disability had commenced within two years, it was entitled to rely on the Insured's failure to make a full disclosure of her medical history in her application. As Judge Delaplaine, speaking for this Court, said in *Silberstein v. Life Insurance Co.,* 189 Md. 182, 187, 55 A. 2d 334 (1947):

> "We specifically hold that a material misrepresentation by an applicant for life insurance, in reliance upon which a policy is issued, avoids the policy, regardless of whether the misrepresentation was made intentionally or through mistake and in good faith, because it results in the assumption by the insurer of a risk dif-

ferent from that which the applicant led it to suppose it was assuming. (Citing cases.)

*See also,* Maryland Code (1957, 1968 Replacement Volume) Art. 48A., § 374.

Additionally, the policy itself provided that "Such waiver shall be allowed only if such disability * * * commenced prior to any default in the payment of a premium * * *" and that "no premium shall be waived the due date of which is more than one year prior" to notice of disability.

*Order and judgment affirmed; costs to be paid by appellant.*