169 N.J. Super. 133 (1979)
404 A.2d 349
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
ESTATE OF DARRELL JEROME SIMMONS AND ESTATE OF DARRELL RICHARDSON, DEFENDANTS, AND ESTATE OF MICHAEL BLANCHE DAVIS, ESTATE OF HENRY MICHAEL, AND ESTATE OF RALPH CURTIS ROBINSON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 21, 1979.
Decided June 25, 1979.
*134 Before Judges LORA, MICHELS and LARNER.
*135 Mr. Dennis A. Drazin argued the cause for appellant estate of Michael Blanche Davis (Messrs. Drazin and Warshaw, attorneys; Mr. Thomas M. Falkowski, of counsel and on the brief).
Mr. James M. McGovern, Jr., argued the cause for appellant estate of Henry Michael (Messrs. Anschelewitz, Barr, Ansell & Bonello, attorneys; Mr. Martin T. McCue, on the brief).
Mr. George R. Hardin argued the cause for appellant estate of Ralph Curtis Robinson (Messrs. Conway, Reiseman, Bumgardner, Hurley & Kleinfeld, attorneys; (Mr. Gerald W. Conway, of counsel).
Mr. Michael J. Cernigliaro argued the cause for respondent State Farm Mutual Automobile Insurance Company (Messrs. Campbell, Foley, Lee, Murphy & Cernigliaro, attorneys).
The opinion of the court was delivered by MICHELS, J.A.D.
Defendants, the estate of Michael Blanche Davis (Davis), Henry Michael (Michael), and Ralph Curtis Robinson (Robinson), appeal from a judgment of the Law Division declaring that an automobile policy of insurance issued to David A. Hays (Hays) by plaintiff State Farm Mutual Automobile Insurance Company (State Farm) does not provide coverage for an accident which occurred on May 30, 1975 in Monmouth County, New Jersey, while Darrell Jerome Simmons (Simmons) was driving an automobile owned by Hays. Simmons, Davis, Michael, Robinson and Darrell Richardson (Richardson) were killed when the Hays' automobile driven by Simmons left the highway and struck a tree.
On May 30, 1975 Hays, who was a member of the United States Marine Corps, was stationed at Earle Ammunition Depot in Colts Neck, New Jersey. He had been stationed there for about 4 1/2 months. Hays was the owner of a 1964 *136 Chevrolet automobile, which was covered by a policy of insurance issued to him through State Farm's Birmingham, Alabama, regional office. The policy declaration described the automobile as being principally garaged in Montgomery, Alabama, where Hays resided. Hays had purchased the automobile approximately one year before the accident.
On the morning of May 29, 1975 Simmons, who was also a member of the Marine Corps stationed at Earle Ammunition Depot, asked Hays if he could borrow Hays' car for the purpose of going to a local bank to cash his pay check. Hays thereupon handed Simmons the keys and granted the latter permission to use the car. He told Simmons that he (Hays) was planning to go somewhere after completing his guard watch that afternoon. Thereafter, Hays commenced his watch and completed it at 4 P.M., by which time, however, Simmons had not returned the automobile. Consequently, Hays started to look for it, walking to the various parking lots on the base and asking other Marines if they had seen Simmons. Finally, when Hays could not find his automobile, he returned to his barracks and went to sleep.
At 11 P.M. Hays was awakened for his fire watch which was to commence at midnight. While on watch Hays walked around the base and checked various buildings. Sometime thereafter, while still on watch, he observed his automobile parked across from Marine headquarters in front of a night club on the base known as "The Powder Keg." Hays walked toward his automobile, at which time he observed Simmons, Robinson, Michael and Davis coming out of The Powder Keg. By the time Hays got to his automobile Simmons already had entered the automobile on the driver's side. Hays asked Simmons to return his keys, to which Simmons responded "No." Hays then explained to Simmons that he wanted the keys "because Robinson [wanted] to go see his wife that next morning." Simmons thereupon told Robinson to get in the car, and that he (Simmons) would take Robinson to see his wife. Hays demanded the keys from Simmons on three different occasions, each time Simmons *137 refusing to give them to him. A fifth member of the group, whose name he did not know, was standing outside of the automobile and told him that he, Hays, "was lucky [he] wasn't over there behind the trucks that if [he] was he'd whip [his] ass." Following this, the others got into the automobile, informing Hays that they were going to the home of some girls in Red Bank. Simmons and the others drove off. Hays, who still was on watch, resumed his duties. The fatal accident occurred later that morning.
State Farm instituted this action, seeking a declaratory judgment that its automobile policy of insurance issued to Hays did not provide coverage for the accident because Simmons did not have permission from Hays to use the automobile at the time of the accident. The State Farm policy, in pertinent part, provided:
 Insured  the unqualified word
 "insured" includes
 (1) the named insured, and
 . . . .
(4) any other person while using the owned motor vehicle, PROVIDED THE OPERATION AND THE ACTUAL USE OF SUCH VEHICLE ARE WITH THE PERMISSION OF THE NAMED INSURED OR SUCH SPOUSE AND ARE WITHIN THE SCOPE OF SUCH PERMISSION. * * * [Emphasis and capitals in the original]
The trial judge at the conclusion of the evidence held that the State Farm policy did not provide coverage to Simmons for the May 30, 1975 accident. He reasoned that under Alabama law, which he found to be determinative of the rights and liabilities of the parties under the State Farm policy, Simmons did not have either express or implied permission from Hays to use the latter's automobile, and, therefore, was not entitled to the coverage afforded by the policy. However, the trial judge further commented that if New Jersey law were deemed applicable, the State Farm policy would afford coverage to Simmons in view of the Supreme Court's decision in Motor Club Fire & Cas. Co. v. N.J. Mfrs. Ins. *138 Co., 73 N.J. 425 (1975), cert. den. 434 U.S. 923, 98 S.Ct. 402, 54 L.Ed.2d 281 (1977) (Motor Club), because "Simmons did not steal the car, i.e., take it with an intent permanently to deprive the true owner of possession of it," even though he "far exceeded the original permission granted by Hays" and "directly refused to return the automobile when Hays demanded it." This appeal followed.
We have no hesitancy in concluding from our study of this record that the State Farm policy issued to Hays did not afford coverage for the May 30, 1975 fatal accident. First of all, we agree with the trial judge that under Alabama Law, which, in accordance with the settled principles of conflicts discussed in Buzzone v. Hartford Acc. and Indem. Co., 23 N.J. 447, 452 (1957), plainly is the law to be applied in determining the rights and liabilities of the parties under the State Farm policy, Simmons did not have either express or implied consent to continue to use Hays' automobile, and, therefore, was not an additional insured under that policy. See Billups v. Alabama Farm Bur. Mut. Cas. Ins. Co., Ala., 352 So.2d 1097 (Sup. Ct. 1977); Alabama Farm Bur. Mut. Cas. Ins. Co. v. Government Empl. Ins. Co., 286 Ala. 414, 240 So.2d 664 (Sup. Ct. 1970); Alabama Farm Bureau Mut. Cas. Ins. Co. v. Robinson, 269 Ala. 346, 113 So.2d 140 (Sup. Ct. 1959). The trial judge's findings and conclusions in this regard are amply supported by the record, and we discern no good reason or justification for disturbing them. Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 455-456 (1977). Accordingly, the judgment of the Law Division is affirmed substantially for the reasons expressed by Judge McGann in his written opinion of August 31, 1977.
In view of the trial judge's comments respecting Motor Club, however, we are constrained to add that, even if we were to apply New Jersey law, the result in this case would be the same. It is settled that every automobile policy offered as proof of financial responsibility in this State must have coverage no more restrictive than that mandated by the Motor Vehicle Security  Responsibility Law. Thus, such *139 policies are deemed to contain the broad omnibus clause required by N.J.S.A. 39:6-46(a) of that law, Motor Club, supra, 73 N.J. at 430; Odolecki v. Hartford Acc. & Indem. Co., 55 N.J. 542 (1970); Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 373 (1966); Matits v. Nationwide Mut. Ins. Co., 33 N.J. 488, 496 (1960). The statute, in pertinent part, provides that the policy shall "insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured. . . [emphasis added]." N.J.S.A. 39:6-46 (a).
Thus, notwithstanding the strong legislative policy to assure financial protection to innocent victims of automobile accidents, liability cannot be visited upon State Farm under its policy in the absence of proof that Simmons was using the automobile at the time of the accident with either the express or implied consent of Hays. The proofs show that Simmons had neither, and that the permission originally granted to Simmons to use the automobile had been revoked unequivocally by Hays. When Hays finally located his automobile after Simmons failed to return it, as he originally agreed to do, Hays demanded that Simmons return the automobile. This demand effectively terminated the permission previously granted Simmons to use Hays' vehicle. Simmons emphatically refused to comply with Hays' demand for possession. Moreover, one of the other men threatened Hays with physical violence. Notwithstanding Hays' repeated demands upon Simmons for return of the automobile, Simmons took the automobile without the owner's consent or permission, express or implied. In the circumstances, the State Farm policy did not afford coverage to Simmons.
Finally, we observe that none of the controlling cases discussing application of the initial permission rule involved a factual context where, as here, after having given permission to use a motor vehicle, the owner thereof confronts the permittee and explicitly terminates or revokes that permission. See Motor Club, supra; State Farm v. Zurich Am. Ins. Co., *140 62 N.J. 155 (1973); Odolecki v. Hartford Acc. & Indem. Co., supra; Selected Risks Ins. Co. v. Zullo, supra; Matits v. Nationwide Mut. Ins. Co., supra.[1] Under such circumstances, the effective termination or revocation of the initial permission negates the existence of permission thereafter, either express or implied.
Accordingly, the judgment of the Law Division is affirmed.
NOTES
[1] To the extent that Lewandowski v. Nat'l Grange Mut. Ins. Co., 149 N.J. Super. 591 (Law Div. 1977), is viewed as dealing with such a factual complex, we expressly disapprove the dicta therein to the effect that application of New Jersey's initial permission rule under those circumstances would result in liability coverage.