JAMES C. KOTZIAN AND LUCILLE E. KOTZIAN, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. DONALD E. BARR, JR., DEFENDANT-APPELLANT.

Argued October 30, 1978—Decided November 15, 1979.

Mr. *Roy D. Cummins* argued the cause for appellant (*Mr. C. Kennon Hendrix*, on the brief).

Mr. *Thomas F. McGuire* argued the cause for respondents.

The opinion of the Court was delivered by

CLIFFORD, J.

The factual complex giving rise to the litigation is adequately set forth in the opinion of the Appellate Division, 152 *N.J.Super* 561, 563–64 (1977), as follows:

* * * Plaintiff James Kotzian was seriously injured on June 24, 1973 when his automobile was struck by that of defendant Barr, who had fallen asleep at the wheel. Barr was insured by Government Employees Insurance Company (GEICO) under a liability policy providing a maximum coverage of $15,000, a sum which, in view of the severity of the injury and the virtually incontestible negligence of Barr, was substantially less than the fair value of plaintiffs' claim. Barr himself was conceded to be judgment-proof and there were apparently no special circumstances here in respect of the relationship between the insured and the insurer which could have subjected GEICO to any liability in excess of the policy limit. Rather early in the litigation, which was commenced on January 10, 1974, GEICO offered plaintiffs the policy limit of $15,000, but without any interest thereon, in full settlement of Barr's liability. Plaintiffs refused, making the final counter proposal, rejected by GEICO, of their acceptance of the policy limit plus prejudgment interest on the fair value of the claim, calculated by them to be $100,000. GEICO ultimately applied to the trial court pursuant to *R.* 4:57–1 for leave to deposit the $15,000 in court. That leave was granted by an order entered on June 25, 1976, which also included, on GEICO's application, the provision that that sum represented the "full extent of the obligation of that insurer including any obligation of the insurer to pay prejudgment interest."

The order further provided that all prejudgment interest, "regardless of who is obligated to pay same, is tolled as of the date of the offering of said policy limits to the plaintiff in settlement of this claim." The action was then tried before a second trial judge to a jury which returned a combined verdict in plaintiffs' favor against Barr in the amount of $100,000. Plaintiffs' application for prejudgment interest was denied by the second trial judge, who regarded himself bound by the entry of the earlier order. It is from that final order of denial that plaintiffs appeal.

The Appellate Division viewed the sole question raised by the appeal as "whether or not the trial judge erred in denying prejudgment interest on the verdict obtained by plaintiffs *   *." Its approach to resolution of this issue began with a review of the history of the prejudgment interest rule, *R.* 4:42–11(b), and of the policy considerations which prompted this Court to adopt the Rule, as extensively set forth in *Busik v. Levine*, 63 *N.J.* 351, *appeal dismissed*, 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.*2d 733 (1973). The Rule as originally drawn was in mandatory terms but was later amended, effective April, 1975, to permit suspension of prejudgment interest in "exceptional cases." The court below concluded that judicial suspension of prejudgment interest extended "only to those cases where an award of interest would neither advance the aim of early settlement nor constitute fair compensation to the plaintiff for money withheld and used or presumptively used by the defendant." 152 *N.J.Super.* at 566.

In applying this principle the Appellate Division held that in the circumstances of this case it was "not inequitable to require GEICO to pay interest on its $15,000 from the date the complaint was filed until the date it placed the money beyond its own reach by making the deposit in court," pointing out that the carrier can always "stop the running of the prejudgment interest by a deposit in court where it finds itself, as did GEICO here, willing to settle but unable to do so for reasons not implicating any unreasonable conduct on the part of the plaintiff." 152 *N.J.Super.* at 567. It went on to hold that the $85,000 portion of

the verdict which was beyond Barr's liability coverage was not subject to prejudgment interest; and, finally, that an evaluation of what constitutes an exceptional case within the meaning of the rule "cannot realistically be undertaken prior to the final disposition of the action." *Id.* at 568.

We granted certification, 76 *N.J.* 241 (1978), to review so much of the determination below as imposes prejudgment interest on GEICO's $15,000 portion of the plaintiffs' judgment. As to that issue, we reverse.

At the outset we emphasize that there are two issues projected. The first is the question of prejudgment interest on GEICO's policy limits. Although the company expressed at oral argument before the Appellate Division a willingness to submit itself directly to the jurisdiction of the court with respect to that issue, it is important not to overlook the fact that the insurance carrier is not a party to this suit.[1] Hence, the ultimate question before us remains whether the defendant, Barr, should suffer judgment against him in an amount which includes prejudgment interest on *a part* of that judgment—that is, so much of it as is within his ability to pay by reason of his having protected himself through liability insurance. That protection in this instance was limited by contract to $15,000.

As did the Appellate Division, we advert to the policies underlying the prejudgment interest rule, namely, the indemnification of a plaintiff for the loss of income he presumably would have earned had payment not been delayed, and the encouragement of prompt consideration of settlement possibilities. *Busik v. Levine, supra,* 63 *N.J.* at 358–60. As pointed out above, the original mandatory terms of the Rule were

---

[1] *R.* 4:42–11(b) provides for prejudgment interest to be included "in the judgment."

amended precisely for the reasons set forth by Judge Conford in his dissent in *Busik*, 63 *N.J.* at 383–85, wherein he urged that the application of prejudgment interest be left to the sound discretion of the trial court. As *R.* 4:42–11(b) now stands, the exercise of that discretion is to be guided essentially by the aforementioned policies which gave birth to the Rule. And so we must determine whether, under all the circumstances, the trial court mistakenly exercised its discretion in denying prejudgment interest.

In examining those circumstances we necessarily focus on the settlement posture of the parties. In this case there were certain restraints on both plaintiff and defendant as they approached amicable disposition of the claim. On defendant's side there was the limitation of the insurance contract which defendant had purchased from GEICO. The policy limit was $15,000, the amount the company agreed to pay as damages because of bodily injury sustained by any person as the result of an automobile accident. In addition GEICO agreed to pay interest "on the entire amount of any judgment [in any covered lawsuit] which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon  *   *   * "—that is, post-judgment interest on $15,000. The policy contains no undertaking by the company to pay prejudgment interest, and there is neither a regulation of the insurance commissioner nor any statute requiring the inclusion of any such undertaking in automobile liability policies issued in this state. *Cf. State Farm Mutual Automobile Insurance Co. v. Estate of Simmons*, 169 *N.J.Super.* 133, 138 (App.Div. 1979) (every automobile policy offered as proof of financial responsibility in this State is deemed to contain the broad omnibus clause required by *N.J.S.A.* 39:6–46(a), the Motor Vehicle-Security Responsibility Law); *Denham v. Bedford*, 82 *Mich. App.* 107, 266 *N.W.2d* 682, 686 (Ct.App. 1977) (prejudgment interest statute becomes a part of the insurance contract).

On the other hand the plaintiffs too were laboring under certain strictures. In addition to their claim against Barr they had filed suit against the Borough of Stone Harbor, alleging that police officials were negligent in ordering Barr out of town after they discovered him sleeping in his parked car, with the result that being forced to drive while in a tired condition he fell asleep at the wheel and struck the Kotzian vehicle. When GEICO offered its policy limits very early in the litigation, plaintiffs understandably took the position that they could not settle, for to do so would have reduced by half the amount of any judgment which they might ultimately recover against the Borough. See *Theobold v. Angelos*, 44 *N.J.* 228, 239–41 (1965).[2] As it turned out, the Borough ultimately succeeded on a motion for summary judgment, and this result was affirmed by the Appellate Division in December, 1975.

It was within these restrictions that the parties explored settlement. As has been pointed out, defendant's liability carrier promptly offered its full policy limits. The Appellate Division was of the view that plaintiffs' refusal to accept that offer did not implicate any unreasonable conduct on their part. To the extent that the open claim against the Borough was an inhibiting factor, we agree that non-acceptance of the offer was not unreasonable. But beyond that we think plaintiffs' tactics were decidedly open to question. They insisted, as part of what the court below termed their "final counter proposal," on the full policy limit "plus prejudgment interest on the fair value of the claim, calculated by them to be $100,000." 152 *N.J.Super.* at

---

[2] Had the accident in question occurred a mere 59 days later, these fears would have been ill-founded. Under the Comparative Negligence Law *N.J. S.A.* 2A:15–5.1 *et seq.*, effective August 22, 1973, comparative contribution would apply and "only the percentage amount equal to the percentage of negligence attributable to the settling defendant is deducted, no matter what the size of the settlement." *Rogers v. Spady*, 147 *N.J.Super.* 274, 278 (App.Div.1977).

563. Insistence on prejudgment interest as part of a settlement flies directly in the face of the spirit, if not the letter, of this Court's Notice to the Bar, published some three years before the settlement negotiations in this case were commenced, 95 *N.J.L.J.* Index Page 341 (1972), to the effect that *R.* 4:42–11(b) does not apply where a judgment is entered following a settlement, and "[t]he Supreme Court intends that [prejudgment] interest be added only when an award is made as a result of a trial, whether by a jury or by a judge sitting without a jury." See also Pressler, *Current N.J. Court Rules, Comment R.* 4:42–11(b).

During the entire course of negotiations plaintiffs never budged from their demand of policy limits plus prejudgment interest on $100,000 "from the date of the filing of the complaint to the time the matter is either settled or tried." They adhered to this position even after the Borough was exonerated. In determining that plaintiffs' intransigence and their refusal to forego all prejudgment interest were not unreasonable, the Appellate Division first suggested that "it is clear that GEICO's maximum liability on its contract of insurance was the policy limit of $15,000 plus prejudgment interest on the first $15,000 of the verdict", 152 *N.J.Super.* at 566; and then said that "[i]n view of the fact that [plaintiffs] had no hope of realizing the fair value of their virtually indefensible claim because of Barr's impecuniousness, it would be unjust to penalize them for declining to accept in full settlement anything less than *the maximum amount of the carrier's post-verdict liability, which would have included prejudgment interest on the policy limit,*" *id.* at 567 (emphasis added).

This, of course, begs the ultimate question in the case and completely disregards the fact that the company's maximum exposure under its contract with its assured was $15,000 plus *post*-judgment interest—not *pre*-judgment interest. In addition, the difficulty with the position of the court below is that while there is an unwillingness to "penalize" plaintiffs for not accepting defendant's offer, there is no apparent recognition of

the consequence, that is, a penalty on the carrier for offering no more than the full amount it had contracted to pay. Were policy limits not involved, we would have little difficulty in concluding that prejudgment interest should be assessed in this case. Surely, as the court below pointed out, GEICO could have immediately deposited the policy limits into court, as it eventually did. See *R.* 4:57. However, we are not prepared to say that GEICO's failure to have made earlier deposit of its full policy limits, having sought early in the proceedings to make the money available to plaintiffs by its offer, should result in the company's being required to pay over and above the amount contracted for with its assured. This is not to say that the insurance contract is so sacrosanct that misconduct or bad faith on the part of the carrier would protect it against a claim for prejudgment interest over its policy limits; but that is not the case here and indeed at oral argument plaintiffs' attorney expressly eschewed any such claim. Under all the circumstances we detect no mistaken exercise of the trial court's discretion in disallowing prejudgment interest.

Accordingly, so much of the judgment appealed from as imposes prejudgment interest on GEICO's $15,000 portion of plaintiffs' judgment is:

Reversed.

PASHMAN, J., dissenting.

I dissent substantially for the reasons set forth by Judge Pressler writing for a unanimous Appellate Division. *Kotzian v. Barr*, 152 *N.J.Super.* 561 (App.Div.1977). I also wish to address directly what I consider to be the flaws in the Court's analysis.

The majority agrees with the Appellate Division that the policies of complete compensation and encouragement of settlements should govern the decision to suspend prejudgment interest. See *ante* at 363–364; ; 152 *N.J.Super.* at 566; see also *Busik v. Levine*, 63 *N.J.* 351, 358–360 (1973), app. dism., 414 *U.S.* 1106, 94 *S.Ct.* 831, 38 *L.Ed.2d* 733 (1973). What the majority

fails to realize is that in order to further those policies in situations like that before us today, it is necessary to impose prejudgment interest on an insurance carrier which has assumed the defense of a tortfeasor.

Both "issues projected," *ante* at 363, are misconceived by the majority. It describes the "ultimate question before us" as whether Barr should be liable for prejudgment interest on the $15,000 paid by GEICO. See *ante* at 363. It is difficult to perceive how the majority can construe *R.* 4:42–11(b) to hold that the sum actually recovered by plaintiff is the pertinent basis for calculating prejudgment interest. The rule clearly states that the court shall calculate prejudgment interest "on the amount of the *award*" (emphasis supplied). If the ultimate issue were Barr's liability for interest, it would concern liability for interest on the entire award, regardless of his present inability to pay more than a portion.

Even when properly conceived, Barr's liability is not the ultimate issue. It was not litigated at trial and the Appellate Division gave it only brief consideration.[1] The central question in this case—whether GEICO is subject to the prejudgment interest rule when the resulting payment would exceed its policy limitations—is dismissed by the majority in a single paragraph.

The majority takes great pains to emphasize that early in the litigation GEICO offered to settle the suit for $15,000, the full amount of its liability under the insurance policy. At the time of that settlement proposal, GEICO could, and should, have tolled the running of prejudgment interest by depositing the offered $15,000 with the court. See *R.* 4:57. Each day of delay in payment was a day in which "the carrier [received] income

---

[1]The Appellate Division ruled that since defendant Barr was impecunious and had relinquished control of his defense to GEICO, imposing interest on him would not serve the purposes underlying *R.* 4:42–11(b) and was therefore unwarranted. See 152 *N.J.Super.* at 567–568. With this holding I agree.

from a portion of the premiums on hand set aside as a reserve for pending claims." *Busik,* 63 *N.J.* at 359. The prejudgment interest rule, *R.* 4:42–11(b), reflects the recognition that the income GEICO earned rightfully belongs to the injured plaintiffs "to indemnify [them] for the loss of what the moneys due [them] would presumably have earned if payment had not been delayed." *Busik,* 63 *N.J.* at 358. Requiring GEICO to pay interest would not constitute unjust punishment for acting under contractual "restraints." The payment of prejudgment interest is not a "penalty," nor would its imposition on the carrier be an act of punishment. It would simply place GEICO in the same position in which it would have been had it acted properly and complied with *R.* 4:57 early in the litigation.

The majority begs the question before the Court when it characterizes the policy limit as a "restraint" justifying GEICO's refusal to offer its fair share of prejudgment interest. See *ante* at 363–364. The issue before us is the application of a Rule of Court, not the interpretation of an insurance policy. If the rule applies to insurance carriers, its provisions govern the contractual relationship between insurer and insured whether or not the policy explicitly so provides.[2] See, *e. g., Motor Club Fire & Cas. Co. v. N. J. Manu. Ins. Co.,* 73 *N.J.* 425, 432 (1977); *Hollin v. Essex Mut. Benefit Ass'n of Newark,* 88 *N.J.L.* 204, 205–206 (E & A 1915); *Foster v. Washington Nat. Ins. Co.,* 118 *N.J.L.* 228, 230–231 (Sup.Ct.1937). The insurer "must expect that its policy will be construed in accordance with the law as it exists at the time its terms are before a court." *Allstate Ins. Co. v. Campbell,* 95 *N.J.Super.* 142, 151 (Ch.Div.1967). If the carrier may be liable for prejudgment interest, it should adapt its negotiation strategy to reflect the application of *R.* 4:42–11(b).[3]

---

[2]This is the reasoning expressly adopted by the Michigan Court of Appeals in *Denham v. Bedford,* 82 *Mich.App.* 107, 266 *N.W.2d* 682 (Mich.Ct.App. 1977), a case cited by the majority in support of its position. See *ante* at 364 .

[3]The majority's dictum interpreting our Notice to the Bar, 95 *N.J.L.J.* Index Page 341 (1972), see *ante* at 365–366 is erroneous. That announcement

By providing counsel for defendant and controlling his defense, the insurance company has consented to participate in the controversy. This consent establishes the court's jurisdiction over the insurer even though it has not been served with process and is not a named party.[4] See *Battle v. General Cellulose Co.*, 23 *N.J.* 538, 546 (1957). In this case, the insurance company controlled the assured's defense. It made the decisions regarding negotiation tactics and settlement offers. It earned income on unpaid funds. It should therefore share responsibility for the consequences of a delayed settlement.

Applying *R.* 4:42–11(b) to insurance companies defending tortfeasors is justified not only because it will further the purposes underlying the rule, but it is also consistent with the duty of the insurance industry to maintain the integrity of the civil adjudicatory process. No one would dispute that "the insurance business is strongly affected with a public interest," *Sheeran v. Nationwide Mut. Ins. Co., Inc.*, 80 *N.J.* 548, 559 (1979); see, *e. g.*, *Saffore v. Atlantic Cas. Ins. Co.*, 21 *N.J.* 300, 310 (1956); *McCarter v. Firemen's Ins. Co.*, 74 *N.J.Eq.* 372, 376–383 (E & A 1909). This interest extends beyond the contractual relationship between insurer and insured. "Liability policies are matters of obvious State concern, not only with respect to the security of the insured but also with respect to the compensation of the injured claimants." *Howell v. Rosecliff Realty Co., Inc.*, 52 *N.J.* 313, 326 (1968). The conduct of insurers has a substantial

---

simply observed that a judge should not add prejudgment interest to the amount of a negotiated settlement, since the parties had already agreed on the sum of current dollars that would release plaintiff's claims. The likelihood of prejudgment interest following a trial is one of a multitude of factors to consider during settlement negotiations.

[4] In this case there is no problem regarding the court's jurisdiction. As both the Appellate Division and the majority point out, GEICO was willing to submit to jurisdiction. Such a stipulation is not only "entirely appropriate and consistent with the true interests here involved," *Kotzian v. Barr*, 152 *N.J.Super.* at 566 n.2, it is unnecessary precisely because of the insurer's "true interests."

impact upon the fairness and promptness of recoveries by tort victims. This power of the industry must be governed by the same prudent and public-spirited concern for justice that is the fundamental canon of the professional conduct of the Bench and Bar. See generally "Preamble," *A.B.A. Code of Professional Responsibility* (1976).

The case before the Court provides an example of how that concern should be implemented. The liability of the assured was undisputed. The controversy no doubt initially focused on his ability to satisfy excess liability. An insurer would be discharging its public responsibilities properly if it affirmatively endeavored to determine the extent of the insured's personal assets. Should it find its insured impecunious, disclosure to the victim would make settlement negotiations potentially more fruitful. If the only point of dispute is a collateral issue like the application of *R.* 4:42–11(b), the insurer should take whatever reasonable measures are necessary to obtain a prompt determination by the trial court and expeditious appellate review.

Instead of affirming the responsibilities of insurance companies to the legal system, the majority has accorded them a preferred position among civil litigants. Although carriers control the defense of tort actions and earn income from funds set aside to pay tort judgments, the majority today holds that they will be liable for prejudgment interest only if they contract with their insureds to assume that responsibility. This ruling will discourage prompt settlements in all future cases in which it is relatively certain that a plaintiff's recovery will exceed the limits of an insurance policy. This is so because in all such cases, the carrier will profit from each day it refuses to pay that policy limit to plaintiff. Such a state of affairs will undermine the policies sought to be furthered by *R.* 4:42–11.

Today's decision will permit windfalls to insurance companies and will serve to increase the number of cases that our already overburdened trial courts must resolve. It is a decision which

fails to recognize the role of insurance companies in the fair and expeditious resolution of tort claims.

I would hold that GEICO should pay interest on the $15,000 from the date the complaint was filed until it deposited the monies into court. I therefore respectfully dissent.

Chief Justice HUGHES and Justice HANDLER join in this dissent.

*For affirmance*:—Chief Justice HUGHES and Justices PASHMAN and HANDLER—3.

*For reversal*:—Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER—4.