Plaintiff's counsel will submit an order in conformance with this decision.

654 A.2d 1043

CHRISTINA BAILEY, PLAINTIFF, v. GARDEN STATE HOSPITAL-IZATION PLAN, PRUDENTIAL INSURANCE COMPANY, AND STATE OF NEW JERSEY DIVISION OF MEDICAL ASSIS-TANCE AND HEALTH, DEFENDANTS.

Superior Court of New Jersey
Law Division
Middlesex County

Decided November 16, 1994.

*Ann L. Renaud,* for plaintiff.

*Clark W. Convery,* for defendant Garden State Hospitalization Plan.

*Paul Mancuso,* for defendant Prudential Insurance Company.

*Eileen C. Stokley,* for defendant Division of Medical Assistance & Health Services.

LONGHI, A.J.S.C.

Plaintiff, Christina Bailey, was seriously injured in an automobile accident on April 12, 1994. She brings this action by way of verified complaint and order to show cause against defendant,

Prudential Insurance Company (Prudential), her PIP carrier and defendant, Garden State Hospitalization Plan (Garden State) her hospital benefits plan insurance carrier, seeking a determination of the order in which certain medical and hospital bills are to be paid. Plaintiff also seeks a determination as to whether or not all or part of the bills incurred at the Kessler Institute are covered by the terms of Garden State's policy.

Garden State has filed a motion returnable on the return date of the order to show cause seeking to dismiss the complaint for failure to state a cause of action. Because the resolution of the issues will have an indirect, but serious impact, on the State of New Jersey, Division of Medical Assistance and Health Services (DMAHS), which administers the "Medicaid" program, plaintiff has named DMAHS as a party defendant.

This is a case of first impression and requires the interpretation of several statutes and provisions of the New Jersey Administrative Code.

On April 12, 1994, Christina Bailey was rendered a quadriplegic as a result of injuries received in an automobile accident. To date she has incurred the following medical expenses: $221,000 for two hospital confinements, approximately $75,000 for a stay at The Kessler Institute, and over $50,000 from other medical providers. Additionally, $70,000 is needed to restructure her home for handicap usage. Plaintiff will also need a wheelchair, a specialized bed and a customized van for transportation. Future medical costs have been estimated to be approximately $280,000 per year.

It is alleged that neither plaintiff nor her family is financially able to provide her with the necessary home modifications or transportation that would enable her to live at home and in her community. Without the house modification and means of transportation, plaintiff most likely will be relegated to nursing home care.

Prudential's PIP policy provides coverage for hospitalization costs, other medical benefits (including restructuring plaintiff's

house), the cost of specialized equipment and the customized van up to the policy limit of $250,000. Prudential has paid approximately $47,000 in hospital bills. However, the remaining bills incurred for the two hospitalizations and the Kessler Institute exceed the policy limits.

Garden State provides coverage for acute hospital services and certain other limited health care benefits but does not cover the cost for specialized equipment or for restructuring plaintiff's home. Additionally, Garden State disputes that the Kessler Institute hospitalization is covered under its policy provisions.

Plaintiff has asked Prudential to first pay the non-hospitalization bills. She has asked Garden State to pay for the two hospitalizations and for all or part of the Kessler Institute bill. Prudential is hesitant to do plaintiff's bidding without court approval. Garden State takes the position that because Prudential is the primary PIP carrier, Prudential must first pay the expenses in the chronological order they are incurred. The position taken by Garden State will result in Prudential's exhausting its policy limits on the hospitalization costs, thus leaving plaintiff without coverage for other incurred medical and medically related expenses, such as specialized equipment and home modifications.

DMAHS is the Division in the New Jersey Department of Human Services that administers the "Medicaid" program, a joint federal/state funded program of medical assistance established by Title XIX of the Social Security Act, 42 *U.S.C.A.* sec. 1396. New Jersey participates in the Medicaid program pursuant to the New Jersey Medical Assistance Act, *N.J.S.A.* 30:4D–1 to 19. Medicaid is a program of medical assistance where payments are rendered to participating medical providers for services rendered to Medicaid recipients. Medicaid is a payor of last resort. *N.J.S.A.* 30:4D–2.

Eligibility for Medicaid is tied to certain categorical groups but the common requirement is indigency, as determined by assets and income. To date, plaintiff has not applied for Medicaid benefits but DMAHS believes that because of the serious nature

of her injuries that she may now or in the near future qualify for Medicaid and/or a cash assistance program such as Social Security disability. DMAHS believes that the resolution of the issues before the court will impact on Medicaid insofar as the earlier exhaustion of plaintiff's other assets will result in an earlier triggering of Medicaid eligibility and hence, additional expenditure by that program.

Plaintiff seeks: (1) to compel Garden State to pay plaintiff's hospital expenses in accordance with her policy and to reimburse Prudential for its previous payment of $47,000; (2) to compel Prudential to refrain from making payments to hospital care providers and to make payments to all other medical care providers in accordance with its policy; and (3) to compel Garden State to pay attorney fees.

As a preliminary matter, counsel for Garden State has called into question the jurisdiction of this court to hear the case. This contention is without merit. Counsel asserts that *N.J.A.C.* 11:3–37.1 to –37.14 provides administrative procedures for resolving the dispute as to coverage between defendant insurers and that this administrative mechanism constitutes the appropriate forum. Counsel does not indicate where in the Code such a mechanism can be found nor can the court find such a provision in the Code.

The issue to be decided is whether, in the context of an automobile accident, a health benefits plan carrier (Garden State) is ultimately responsible for the payment of benefits within the coverage of its policy that have arisen first in time where another insurer (Prudential) is designated as the primary source of PIP benefits.

Here is what is at stake. If Prudential pays the earlier of the hospital bills and exhausts its $250,000 limit, then Garden State will pay the remaining (if any) hospital bills. Plaintiff will look to

Medicaid to pay some or all of the bill at the Kessler Institute [1] and for nursing care thereafter. Medicaid does not pay for disability customizations to a home or van. If Garden State pays or is liable for the earlier hospital bills, then plaintiff can use Prudential's PIP benefits for Kessler and customization of her house and van, thus increasing her chances of avoiding institutionalization in a nursing home. Additionally, by never becoming institutionalized, plaintiff increases her chances that any recovery she may obtain in the future could be used toward her expenses, instead of reimbursement of Medicaid's statutory lien for the cost of services and institutionalization paid by Medicaid.

This matter arises under *N.J.S.A.* 39:6A–4.2 which provides:
Except as provided in [*N.J.S.A.* 39:6A–4.3d], the personal injury protection coverage of the named insured shall be the primary coverage for the named insured and any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own.

*N.J.S.A.* 39:6A–4.3d gives the insured the option of designating his health insurer as the primary source of PIP benefits. Plaintiff did not select this option. Thus, the Prudential policy constitutes the primary source of PIP benefits and the Garden State policy is secondary. At first blush, it would seem that because PIP is primary, Prudential would be required to pay health benefits in chronological order until its policy limits are exhausted. This scenario, however, would create an injustice in the event of a catastrophic injury, such as here, where medical expenses will exceed the limits of both coverages. The plaintiff who paid premiums for both insurance policies would be prevented from receiving the benefits of both policies. Fortunately, the resolution of this issue does not hinge on whether the "primary" insurer pays outstanding bills in chronological order.

Rules and regulations duly promulgated by a state administrative agency have the force and effect of law. *State v. Atlantic*

---

[1] There is a dispute between plaintiff and Garden State as to whether all, some or none of the bill incurred at the Kessler Institute is covered under the hospital plan.

*City Elec. Co.*, 23 *N.J.* 259, 270, 128 *A.*2d 861 (1957). In this case, *N.J.A.C.* 11:3–37.9(b)–(d) specifically directs the way in which benefits are to be paid:

(b) Actual benefits paid by the PIP plan shall be for all medical expenses which are eligible expenses incurred for treatment of injuries, subject to application of the deductible provided for by the terms of the automobile policy, and a 20 percent copayment requirement for amounts incurred after the deductible and up to $5,000.

(c) Actual benefits payable by a health benefits plan, when the PIP plan is providing primary coverage for medical expenses incurred for treatment of injuries, shall be the lesser of the remaining uncovered allowable expenses or the actual benefits that would have been payable had the health benefits plan been providing coverage primary to the PIP plan.

(d) When a health benefits plan provides hospital expense or service benefits only, or medical expense or service benefits only, and is not otherwise a part of a basic health benefits package, all allowable expenses remaining uncovered shall be considered by that health benefits plan for the provision of benefits, without regard as to whether the expenses are hospital-related or medical-related expenses. Actual benefits paid by that health benefits plan for the allowable expenses remaining uncovered shall not exceed the total actual benefits which would have been payable had the health benefits plan been providing coverage primary to the PIP plan.

"Allowable expense" is defined as "a medically necessary, reasonable and customary item of expense covered by an insured's health benefits plan(s) or PIP plan as an eligible expense, at least in part." *N.J.A.C.* 11:3–37.2.

Garden State, as the "secondary" insurer, is required to pay the benefits it would have already paid had it been the primary insurer (as this amount is far less than the uncovered, allowable expenses). As long as the expense falls within the coverage of the Prudential policy, Garden State must view the expense without regard to whether its own policy covers the expense. For example, the Prudential policy would cover the cost of renovations to plaintiff's home. Therefore, the cost of such renovations is an "allowable expense." As such, if presented with

the bill from the renovations, Garden State cannot deny payment on the basis that the expense lies outside the scope of its policy.[2]

Moreover, justice dictates that Garden State should be compelled to pay plaintiff's hospital expenses. It is simply unfair to have payment of expenses determined by happenstance. Yet, that is exactly what Garden State is asking the court to do when two or more policies of medical benefits insurance exist. Coverage should not depend on the fortuity of when certain bills accrue or are received.

 While the issue has not been raised by the parties, the outcome dictated by *N.J.A.C.* 11:3–37.9 and logic seems to contradict language found in *N.J.A.C.* 11:3–37.3(b), which states "[n]othing in this subchapter shall be construed as requiring any health benefits provider to provide coverage for any treatment or service not otherwise covered under the terms of the applicable health benefits plan." See also *N.J.S.A.* 39:6A–4.3d. In fact, no contradiction exists. Sorting out this apparent contradiction requires defining what it means to provide "primary" coverage pursuant to *N.J.S.A.* 39:6A–4.2.

In *USF & G v. Industrial Indem.,* 264 *N.J.Super.* 379, 624 *A.*2d 1014 (App.Div.1993) the court discussed the meaning of "primary" as used in *N.J.S.A.* 39:6A–4.2. The "primary" carrier merely denotes the carrier first required to pay PIP benefits, preserving its right of contribution from other insurers also liable for such payments. *Id.* at 385, 624 *A.*2d 1014. The section's purpose is to promote the prompt payment of PIP payments by identifying a

---

[2] It should be further noted that Garden State is also contractually obligated to pay benefits in the above prescribed manner. Garden State issues a "certificate" which explains to the insured the coverage provided by the policy. This document provides that "[i]f the [Garden State] Plan is secondary to PIP, the actual benefits payable will be the lesser of (i) the remaining uncovered allowable expenses after PIP has provided coverage after application of copayments, or (ii) the actual benefits that would have been payable had the Plan been providing primary coverage." Non–Group Comprehensive Certificate, Garden State Hospitalization Plan, p. 29. This language found in Garden State's "certificate" is similar to that found in *N.J.A.C.* 11:3–37.9(c).

source for the immediate payment of PIP benefits when multiple insurers are unable to agree over each insurer's responsibility. *Id.* at 384, 624 *A.*2d 1014. The payment having been made, the insurers can then decide each one's ultimate responsibility. The court held that USF & G was obligated to pay the insured's PIP benefits initially and then had a right to contribution from other available PIP coverage pursuant to *N.J.S.A.* 39:6A–11, which allows the primary PIP insurer to recover contribution from other PIP insurers.

*USF & G* dealt with a dispute between two PIP carriers and is not directly on point. However, the principle to be taken from the court's discussion is that the "primary" designation has nothing to do with the *ultimate* responsibility for specific expenses. A "primary" carrier is designated so that prompt payment will be made when multiple insurers are unable to agree as to the contributions made by each. Disbursement of funds towards a particular expense does not correspond to ultimate responsibility for that expense. For example, in *USF & G* the "primary" carrier initially was obligated by the statute to pay the insured's medical expenses to insure timely payment. However, ultimately USF & G was not liable for all those expenses. Thus, in this case, simply because Prudential pays the first $250,000 in bills which arise does not mean in the end that the Prudential policy has "paid" those bills.

Plaintiff's expenses should be viewed in terms of a pie diagram. This is apparently the view of the drafters of *N.J.A.C.* 11:3–37.9. The agency's interpretation of the statute it enforces is persuasive as to the intent of the Legislature. *Cedar Cove, Inc. v. Stanzione,* 122 *N.J.* 202, 212, 584 *A.*2d 784 (1991). Ultimately, the pie is divided up amongst the insurers, and only then can one say which funds went to each expense. Therefore, the Code does not compel Garden State to pay bills not covered within the provisions of the policy. In the end, when the benefits are coordinated, the pie divided, Garden State's policy, will have gone towards the hospital bills.

No need exists to compel Garden State to pay plaintiff's hospital bills. *N.J.A.C.* 11:3–37.9(c) and (d) essentially have the effect of merging the Garden State policy into the more comprehensive Prudential policy, thus ostensibly enlarging the $250,000 policy limit. Even if Prudential directs its entire policy towards the hospital bills, Garden State will still be responsible for the expenses (to the extent Garden State would have been obligated had it been the primary insurer) which would otherwise have been covered by Prudential had its policy limit not been exhausted. As the policies are essentially merged, the order of payment makes no difference. In a catastrophic case such as this, where the primary is exhausted, the insured will get the full benefits of her policies.

Nonetheless, as a practical matter, Garden State should be compelled to pay plaintiff's hospital bills. Ultimately, Garden State will be liable to the extent of its policy. Now would seem to be an opportune time to coordinate benefits as *N.J.A.C.* 11:3–37.9 directs.

Garden State's motion to dismiss the complaint for failure to state a cause of action is denied. Plaintiff's request for counsel fees is denied. This is not an action where an insurer has refused to indemnify or defend against a third party. The provisions of *R.* 4:42–9(a) and (b) do not apply. *Vesley v. Cambridge Mut. Fire Ins. Co.*, 189 *N.J.Super.* 521, 461 *A.*2d 162 (App.Div.1983).

There is a factual dispute as to whether plaintiff's stay at the Kessler Institute constitutes in whole or in part a covered hospitalization under the terms of the Garden State policy. The parties shall have sixty days of discovery on that issue.