**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4195-17T3

ROBERT WOOD JOHNSON
UNIVERSITY HOSPITAL,

     Plaintiff-Respondent,

v.

PLYMOUTH ROCK
ASSURANCE INSURANCE
COMPANY and JOSEPH
CALDERONE,

     Defendants-Appellants,

and

HORIZON NJ
HEALTH,

     Defendant.[1]

---

[1] Defendant Horizon NJ Health ("Horizon") was not served with the Notice of Appeal and did not participate in this appeal. By letter dated September 28, 2016, counsel for Horizon asked the trial court to pend any formal answer or motion from Horizon, as it appeared plaintiff was primarily pursuing Plymouth Rock Assurance Company ("Plymouth Rock").

In support of this non-involvement, Horizon's counsel referred to N.J.A.C. 11:3-14.5(a), which prohibits naming a Medicaid provider as primary for

_____

Argued May 28, 2019 – Decided June 25, 2019

Before Judges Sabatino, Haas and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-4307-16.

Glenn D. Curving argued the cause for appellants (Riker Danzig Scherer Hyland & Perretti LLP, attorneys; Glenn D. Curving, of counsel and on the briefs; Peter M. Perkowski, Jr., on the briefs).

Kristen Ottomanelli argued the cause for respondent (Celentano, Stadtmauer & Walentowicz, LLP, attorneys; Kristen Ottomanelli and Steven Stadtmauer, on the brief).

PER CURIAM

Defendant Plymouth Rock Assurance Insurance Company appeals from the trial court's rulings on cross-motions for summary judgment. Defendant also appeals the trial court's award of $184,040.98 in favor of plaintiff Robert Wood Johnson University Hospital ("plaintiff" or "RWJUH"), which was rendered after a subsequent bench trial. Defendant contends that the trial court

_____

purposes of personal injury protection ("PIP"), and as such, defendants "are unable to invoke Bailey v. Garden State Hosp. Plan Rights see 280 N.J. Super. 206 (Law Div. 1994)." Horizon's position was that "the hospital expenses associated with injuries caused by the motor vehicle accident in question are the responsibility of Plymouth as the personal injury protection carrier."

improperly granted summary judgment to plaintiff on the issue of liability for unpaid bills incurred by Joseph Calderone ("Calderone" or "the insured") who was insured by defendant at the time he was involved in a serious accident that caused his stay at RWJUH. Having reviewed the record and the governing law, we conclude that defendant properly processed the claim to maximize the benefits to its insured as expressly permitted by Bailey v. Garden State Hosp. Plan Rights, 280 N.J. Super. 206 (Law Div. 1994), aff'd, 290 N.J. Super. 277 (App. Div. 1996). We therefore reverse the trial court's summary judgment orders and vacate the damages award.

We derive the following facts from the record. In September 2015, Calderone was in a serious auto accident, which rendered him quadriplegic. He received inpatient hospital services from plaintiff between September 16, 2015 and September 28, 2015 as a result of this accident, the charges for which totaled $393,774.72.

At the time of the accident, Calderone was insured under an automobile policy issued to him by the High Point Property and Casualty Insurance Company, which was administered by defendant. The High Point Policy provided personal injury protection ("PIP") benefits to Calderone in the statutory maximum amount of $250,000. Among other things, the High Point

Policy provided coverage for approved medical expenses, as well as the cost of home modifications and renovations needed to make the insured's house handicap accessible.

As a result of Calderone's severe injuries, he needed extensive home modifications. To accommodate these modifications, defendant deferred consideration and payment of other medical invoices pending payment of home modification expenses.

Defendant paid $184,040.98 in home modification costs and $65,959.02 in approved medical expenses that were incurred as a result of Calderone's accident. These payments exhausted Calderone's available coverage under his automobile policy.

When defendant received Calderone's bill for his treatment at RWJUH, it informed Calderone of the exhaustion of his coverage and advised him to submit any unpaid invoices to his health care insurance provider. At that time, Calderone was insured under a Medicaid HMO policy provided and administered by Horizon NJ Health ("Horizon").

Plaintiff subsequently sought payment of its invoices from defendant, but was advised that payment would not be forthcoming due to the exhaustion of

Calderone's policy limits. Plaintiff filed the instant complaint seeking payment of the invoices.

Each party filed cross-motions for summary judgment on the issue of whether defendant was liable for the cost of Calderone's medical expenses incurred at RWJUH. Defendant argued that it was entitled to summary judgment on the issue of liability because, pursuant to Bailey v. Garden State Hosp. Plan Rights, 280 N.J. Super. 206 (Law Div. 1994), aff'd, 290 N.J. Super. 277 (App. Div. 1996), it correctly maximized Calderone's PIP coverage by paying for the cost of his home modifications before paying for plaintiff's claims. Plaintiff argued that as a matter of law, Bailey does not apply because Medicaid can never be an insured's primary insurer. Thus, Calderone was required to exhaust his PIP coverage before Medicaid would pay for his medical expenses. The trial court denied defendant's motion, and granted plaintiff's motion. The court stated:

> [W]hat's before me is a denial of a claim predicated upon the – that the medical carrier, Horizon Health, is responsible for all medical bills is inappropriate. Now, how those bills could have or should have been paid is wrong. But, certainly, High Point is presumed and legally responsible for understanding that a Medicaid carrier cannot be selected under Bailey as the primary.

A-4195-17T3

So, for that, -- and whether there's damages or the amount of damages are not for me to determine at this point[.]

The matter then proceeded to a damages trial where the trial court awarded plaintiff $184,040.98, finding that defendant should have timely paid plaintiff's bills for Calderone's treatment at RWJUH, but did not. The court continued:

[Plaintiff] was entitled to be paid for the hospital services it rendered to Calderone, whether or not such claims exceeded the policy limit in light of High Point's misconduct. See, e.g., Katzian v. Barr, 81 N.J. 360, 367 (1979). Indeed, [plaintiff] should be put in the same position that it would have been if High Point had followed the law.

This appeal ensued.

On appeal, defendant contends that the trial court erroneously granted summary judgment to plaintiff and notes that both the trial court and plaintiff focused on the incorrect issue of whether Calderone was able to designate Medicaid as his primary insurer for medical expenses. In fact, defendant acknowledges that it was Calderone's primary insurer. Defendant argues that the correct issue is whether, as Calderone's primary insurer, defendant was permitted under Bailey to pay for home modification expenses that arose in connection with Calderone's injuries. We conclude that Bailey controls and

6

reverse the trial court's grant of summary judgment to plaintiff and denial of summary judgment to defendant.

The standard of review for a grant of summary judgment is de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

> [W]hen deciding a motion for summary judgment under Rule 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

"[S]ummary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley, 228 N.J. at 346 (quoting Templo Fuente, 224 N.J. at 199).

Plaintiff contends that defendant's handling of the claim violated federal law dictating that Medicaid is always a payer of last resort and state law that prohibits designating Medicaid as primary for purposes of PIP. In that regard, Congress established the Medicaid Program, 42 U.S.C. §§ 1396 to 1396w-5, "for

A-4195-17T3

the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae, 448 U.S. 297, 301 (1980). "Congress, in crafting the Medicaid legislation, intended that Medicaid be a 'payer of last resort.'" Ark. Dept. of Health and Human Servs. v. Ahlborn, 547 U.S. 268, 291 (2006).

Similarly, New Jersey's Medicaid program directs "that benefits provided [by the New Jersey Medical Assistance and Health Services Act] shall be the last resource benefits notwithstanding any provisions contained in contracts, wills, agreements or other instruments." N.J.S.A. 30:4D-2. As a result, the Department of Medical Assistance and Health Services (DMAHS), which administers the New Jersey Medicaid program, N.J.A.C. 10:49-1.1(a), promulgated N.J.A.C. 10:49-7.3, which states, in pertinent part:

> (a) Third-party liability (TPL) exists when any person, institution, corporation, insurance company, health insurer, self-insured plan, group health plan as defined in section 607(1) of the Federal Employee Retirement and Income Security Act of 1974, 29 U.S.C. § 1167(1), service benefit plan, managed care organization or other prepaid health plan, pharmacy benefits manager, third-party administrator as defined in N.J.S.A. 17B:27B–1, absent parent, Medicare program, or any other public, private, or governmental entity or party is or may be liable in contract, agreement, tort, or otherwise by law or equity to pay all or part of the cost of medical assistance payable by the Medicaid or NJ FamilyCare program.

. . . .

> (b) Medicaid and NJ Family Care benefits are last-payment benefits. <u>All TPL, for example</u>, health insurance, Medicare, CHAMPUS, prepaid health plans, workers' compensation, and <u>auto insurance, shall, if available, be used first and to the fullest extent in meeting the cost of the medical needs of the Medicaid or NJ Family Care beneficiary</u>, subject to the exceptions listed in (h) below. If, at the time the provider's claim is filed, either the existence of third-party liability cannot be established or third-party benefits are not available to pay the beneficiary's medical expenses at the time the provider's claim is filed, then the Division will pay the full amount allowed under its payment schedule and seek post-payment recovery in accordance with 42 CFR 433.139(c), (d)(2), and (d)(3).

> [(Emphasis added).]

Although automobile insurers in New Jersey are permitted to offer applicants the option to designate their health insurance providers as the primary payer of PIP benefits, <u>see</u> N.J.S.A. 39:6A-4.3(d), those insured through Medicaid are not permitted to designate their Medicaid insurer as primary for PIP coverage. <u>See</u> N.J.A.C.11:3-14.5(a). Thus, "[a]s a matter of New Jersey law, . . . as between Medicaid and no-fault insurance, it is plain that no-fault is primary." <u>Lusby By and Through Nichols v. Hitchner</u>, 273 N.J. Super. 578, 585 (App. Div. 1994).

We find, however, that the fact that Calderone designated his Medicaid provider as primary is a red herring. Despite the designation, defendant acknowledged its status as primary insurer and, ultimately, it provided medical coverage on a primary basis and exhausted its $250,000 policy limits. Thus, defendant's instructions to Calderone that, upon exhaustion of its policy limits, any remaining medical bills should be submitted to his health insurance in no way contravened the laws dictating that Medicaid is to be the "payer of last resort." See Ahlborn, 547 U.S. at 291; N.J.S.A. 30:4D-2. As defendant exhausted Calderone's coverage, Medicaid, as the payer of last resort, must now step in to cover Calderone's remaining medical expenses in accordance with the terms of its policy and its contract with the hospital.

The pertinent issue here is the allocation of coverage, i.e., if PIP can choose to pay anticipated medical expenses for home modification first and, once those expenses are covered, use the remaining coverage under the policy to cover bills for hospital and other medical providers. In a well-reasoned decision, the Honorable Robert Longhi, A.J.S.C., held that in cases of catastrophic injuries, insurers are permitted to allocate coverage to maximize benefits for the injured policy holder. See Bailey, 280 N.J. Super. at 212.

In Bailey, the plaintiff incurred extensive medical bills and home modification costs, which exceeded her $250,000 in PIP coverage, as the result of an auto accident that rendered her quadriplegic. Id. at 209. She was insured under an auto policy administered by Prudential that provided her PIP coverage and a private medical insurance plan provided by the Garden State Hospital Plan ("Garden State"), which did not cover home modifications. Id. at 208-09. The plaintiff was faced with a situation where the payment of her first-submitted medical bills would exceed her PIP policy limits, leaving no money for the payment of needed home modification costs. Id. at 209-10. Thus, the plaintiff requested that Prudential satisfy costs that would be incurred for home modification benefits prior to paying other earlier submitted medical bills. Id. at 210. This was opposed by Garden State, which argued that as the "primary insurer," Prudential was required to consider and pay all medical bills in the order of receipt. Ibid.

The court determined that the ultimate objective should be to allocate coverage to maximize benefits available to a grievously injured policyholder, and to that end, notions of "primary" and "secondary" coverage were largely irrelevant and should not control allocation of insurance benefits. Id. at 212. The court recognized that although the plaintiff's auto policy was "primary", and

11

therefore, "at first blush" Prudential would be required to pay health benefits in chronological order until its policy limits had been exhausted, doing so "would create an injustice in the event of a catastrophic injury[.]" Ibid. The court noted that "[i]t is simply unfair to have payment of expenses determined by happenstance. Yet, that is exactly what Garden State is asking to do when two or more policies of medical insurance exist. Coverage should not depend on the fortuity of when certain bills accrue or are received." Id. at 214.

This case is exactly on point under Bailey. As in Bailey, Calderone was catastrophically injured and rendered quadriplegic in an automobile accident. See id. at 209. As in Bailey, defendant, acting as Calderone's primary insurer, anticipated that the necessary modifications to Calderone's home would utilize a significant portion of his coverage. See id. at 210. As the court recognized in Bailey, requiring defendant to pay for the claims arising from an insured's accident in chronological order "would create an injustice" when accidents cause catastrophic injuries and claims must be prioritized in this manner. See id. at 212. Thus, it would be "simply unfair to have payment of expenses determined by happenstance. . . . Coverage should not depend on the fortuity of when certain bills accrue or are received." See id. at 214.

A-4195-17T3

We affirmed Bailey, 290 N.J. Super. 277 (App. Div. 1996), and now re-endorse its holding that in cases of catastrophic injury, PIP carriers are permitted to allocate coverage to maximize benefits for its insureds. We discern no reasoned basis to distinguish cases where a private insurance carrier must provide coverage once PIP is exhausted, and cases where Medicaid, as the payer of last resort, must do so. Accordingly, we conclude defendant processed the claim in good faith for the benefit of its insured, and in justifiable reliance on the decision in Bailey.

Because we are reversing the trial court's rulings on summary judgment, we must also vacate the damages awarded to plaintiff. While appellate review of a bench trial is limited, we review conclusions of law de novo. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

An insurance carrier may be liable for payments even if such payment exceeds the policy's coverage limit, if the manner in which the carrier has handled a claim evidences "misconduct or bad faith." Kotzian v. Barr, 81 N.J. 360, 367 (1979). See also N.J. Mfrs. Ins. Co. v. Nat'l Cas. Co., 393 N.J. Super. 340, 352-53 (App. Div. 2007) (finding that an insurance carrier can be liable for claims that exceed the policy's coverage limits when it acts in bad faith).

The trial court briefly cited to <u>Kotzian</u>, to support its decision to grant damages above the $250,000 statutory maximum. However, <u>Kotzian</u> would apply only if defendant's handling of Calderone's claims evidenced "misconduct or bad faith." <u>See</u> 81 N.J. at 367. Here, defendant acted in good faith reliance on <u>Bailey</u>, which is evidenced by the fact that it actually exhausted Calderone's policy in paying for his necessary home modifications. Thus, because defendant's actions did not evidence "misconduct or bad faith," the trial court's reliance on <u>Kotzian</u> was misplaced. <u>See</u> <u>ibid.</u> Therefore, we vacate the trial court's award of damages. We do so without prejudice to the hospital seeking full or partial payment from Horizon, the Medicaid administrator, consistent with the terms of the Medicaid program.

To the extent we have not specifically addressed any arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4195-17T3