749 A.2d 387 (2000)
330 N.J. Super. 219
Jules LADENHEIM, M.D., Plaintiff-Appellant,
v.
Stephen KLEIN, Esq., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted March 29, 2000.
Decided April 19, 2000.
*388 Plaintiff-appellant submitted a pro se brief.
Defendant-respondent submitted a pro se brief.
Before Judges CARCHMAN, LEFELT and LINTNER.
The opinion of the court was delivered by LEFELT, J.S.C. (temporarily assigned).
Plaintiff Jules Ladenheim ("Ladenheim"), a neurosurgeon, appeals from the trial court's determination that defendant Stephen Klein ("Klein"), an attorney, had no liability to Ladenheim for medical services rendered to Klein's client, Albert Cassanello. The trial judge concluded that a "letter of protection" from Klein to Ladenheim did not create an equitable lien in favor of Ladenheim for his medical treatment fees. We reverse.
On December 29, 1991, Ladenheim performed surgery on Albert Cassanello who had been struck on the head by an axe during a North Bergen tavern incident. Ladenheim charged Cassanello $3,750 for the neurological consultation and skull fracture treatment he rendered. Ladenheim provided Cassanello with some follow-up treatment, and by March 2, 1992, Cassanello owed Ladenheim $3,800.
Cassanello retained Klein to represent him in the North Bergen axe incident. Therefore, on January 31, 1992, Klein requested Cassanello's medical report and bill from Ladenheim. In this letter, Klein stated, "[a]t the conclusion of your medical treatment, I would appreciate your forwarding to my attention a medical report and bill. Please indicate to me the cost for this service and I will forward a check to your attention."
Then, on March 6, 1992, Klein wrote Ladenheim, in pertinent part, as follows:
Regarding the [Cassanello] matter, I enclose my check payable to your order in the estimated sum of $250.00 covering a preliminary report regarding medical and surgical treatment rendered to date regarding my client Mr. Albert Cassanello together with an authorization signed by him.

*389 This letter further confirms that your outstanding bill for $3,750.00 is protected from any settlement of this claim. (emphasis added).
Pursuant to Klein's March 6, 1992 letter, Ladenheim submitted Cassanello's medical report on or about March 24, 1992. The report detailed Cassanello's injuries and the surgical procedures and other medical services that Ladenheim had provided. This was the only written medical report Ladenheim prepared in connection with Cassanello's case.
After some procedural difficulties that are not relevant to this appeal, Cassanello's case eventually settled in January 1998. On April 9, 1998, Klein informed Ladenheim that he was not going to "abide by [the] letter of protection" and refused to pay Ladenheim's medical service fees. During trial, Klein explained his justification for refusing to honor the letter of protection:
Let me explain to you what happened. Number one, the client was being very... unreasonable. And he was making demands far greater than what the case should reasonably settle for. He didn't want any of the bills paid. I reduced my legal fee so that he would accept the settlement.
During this period of time, I had forgotten about the Letter of Protection.... I was not going to change the settlement agreement that I had between Mr. Cassanello and myself and I don't believe that it would have made any difference as far as Mr. Cassanello because he wanted X amount of dollars just to try the case.... Dr. Ladenheim decided that he didn't want to be involved in the case. And I basically had to go with other people.
And I was now facing a situation where if I was going to pay his bill that it would have to come out of my portion of the settlement after which I had already reduced my legal fee and I spent a lot of money. So, I didn't want to ... spend a lot of money on costs. Okay? so, these were the motivating factors at that point in time that made me decide not to pay his bill.
The trial judge entered judgment in favor of Klein on May 10, 1999, because he concluded that Klein's January 31, 1992 letter did not create a lien and was not enforceable. The trial judge based his decision on Klein's January 31, 1992 letter, even though Ladenheim's complaint indicated that Klein's March 6, 1992 correspondence constituted the letter of protection and both parties' trial testimony focused on the March letter. Because we conclude that Klein's March 6, 1992 letter created an equitable lien, we must reverse the trial court's judgment.
Equitable liens are based on the equitable maxim that equity "regards as done that which has been agreed to be, and ought to have been, done." Rutherford Nat'l Bank v. H.R. Bogle Co., 114 N.J. Eq. 571, 573-74, 169 A. 180 (Ch.1933). The Supreme Court has explained that equitable liens can be created by express executory contracts that relate to specific property then existing or to property later acquired. In re Hoffman, 63 N.J. 69, 77, 304 A.2d 721 (1973). This lien is "a right of a special nature in a fund and constitutes a charge or encumbrance upon the fund." Ibid. Thus, "[w]here one promises to pay for services rendered out of a fund created in whole or in part by the efforts of the promisee, a lien in favor of the promisee will attach to the fund when it comes into existence." Ibid.
The intent of the parties controls the creation of an equitable lien. VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 547, 641 A.2d 519 (1994). The actual form in which the parties agree to create an equitable lien, however, is immaterial. Rutherford, supra, 114 N.J. Eq. at 574, 169 A. 180.
Klein's March 6 letter indicated that he would protect Ladenheim's outstanding medical bill from any settlement.
*390 The letter was intended to assure Ladenheim that his $3,750 bill would be paid. Ladenheim's current claim is for $3,800. The additional $50 was for services completed on March 2, 1992, and referenced in Ladenheim's March 24, 1992 report. There was no dispute that a portion of Cassanello's settlement (the fund) was for medical and surgical bills from Ladenheim's treatment (the efforts of the promisee). Moreover, the letter identified the source of the funds and committed Klein to protecting Ladenheim's outstanding bill. Therefore, we conclude that Klein's March 6, 1992 letter established an equitable lien in favor of Ladenheim, which attached to Cassanello's settlement proceeds.
On appeal and during trial, Klein tried to justify not paying Ladenheim because Klein alleged that Ladenheim abandoned Cassanello and was unwilling to provide ongoing medical and legal assistance. The parties vociferously disputed this point at trial, and the trial judge, in his written decision, recounted the parties' testimony, but made no findings.
Our review of the record discloses no support in the contemporaneous documents justifying Klein's contention that Ladenheim abandoned his patient, either medically or legally. In fact, the documentary evidence is to the contrary. Accordingly, we exercise our original jurisdiction, and find as fact that Klein voluntarily engaged other medical witnesses, and when the case settled, Klein forgot about his letter of protection in favor of Ladenheim. R. 2:10-5; DeBrango v. Summit Bancorp., 328 N.J.Super. 219, 230, 745 A.2d 561 (App.Div.2000).
Klein also attempted to justify not paying Ladenheim by asserting that during settlement negotiations Cassanello did not want any bills paid. If Klein could not convince either his client to honor the letter of protection or the doctor to compromise his bill, Klein should have disclaimed any interest in this money, deposited the $3,800 into court, and allowed Cassanello and Ladenheim to dispute its disbursement. R. 4:57-1; Kotzian v. Barr, 81 N.J. 360, 367, 408 A.2d 131 (1979); AC-Berwick Transporters, Inc. v. Sendell, 176 N.J.Super. 339, 341, 423 A.2d 321 (Ch.Div.1980). A judge would have then resolved this impasse. R. 4:57-2(a). Klein should not have taken it upon himself to disavow his promise to Ladenheim.
Early in his legal career, Abraham Lincoln reportedly said, "a lawyer's word is his bond." John W. Frost, II, You Should Never Take More Than You Give, 70 Fla. B.J. 6 (August 1996). We now live in different times and practice law under much different circumstances. Nonetheless, effective litigation remains dependent on the good-will and co-operation between lawyers and various professionals who are necessary, as witnesses and consultants, to assist the public in pursuing their legal rights. To properly represent their clients, lawyers need cooperation from doctors, accountants and psychologists, to name just a few of the critical professionals. Unless every professional necessary for the court system is confident that lawyers are trustworthy, clients and the system itself will suffer. We believe strongly that lawyers, judges and all others connected with the judicial system must constantly impress upon the public that a lawyer's word can still be trusted.
The judgment of the trial court is reversed. Judgment is entered in favor of Ladenheim and against Klein in the amount of $3,800, including prejudgment interest from the date of Cassanello's settlement.
Reversed and remanded for entry of judgment in accordance with this decision.