# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4712-18T1

N.L.,

    Plaintiff-Appellant,

v.

M.B.,

    Defendant-Respondent.

_____

Submitted November 18, 2020 – Decided December 18, 2020

Before Judges Alvarez and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-0799-19.

Bell & Shivas, P.C., attorneys for appellant (Paula Ortega and Brian C. Laskiewicz, on the brief).

Respondent did not file a brief.

PER CURIAM

Plaintiff N.L. filed a complaint under the Prevention of Domestic Violence Act of 1991, N.J.S.A. 2C:25-17 to -35, and obtained a temporary

restraining order (TRO). It was dissolved, and she was denied a final restraining order (FRO), after a May 22, 2019 hearing. The complaint alleged defendant M.B. had committed acts of harassment, N.J.S.A. 2C:33-4, by email and texts.

We reverse because we find N.L. established by a preponderance of the evidence the necessary predicate acts, and the need for an FRO in order to prevent future harassment, pursuant to Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006). Exercising original jurisdiction, we further direct the court immediately enter an FRO in accordance with this decision. The FRO shall restrain M.B. from contact with N.L., N.L.'s mother L.L., stepfather R.T., and M.N. and K.C., part-time caretakers for the parties' children. See N.J.S.A. 2C:25-29(b)(7) (authorizing restraint from contact with a victim's family members and employees—"others with whom communication would be likely to cause annoyance or alarm to the victim.").

The parties were divorced June 30, 2015. M.B. sent the texts and emails that N.L. asserted constituted harassment between November 2018 and March 2019, nearly four years later. M.B. readily acknowledged sending approximately 330 messages, which are reproduced in over ninety-three pages of N.L.'s appendix. Additional messages were sent; not all the offending communications were moved into evidence. The messages that were introduced

at trial are offensive, belligerent, argumentative, and otherwise disturbing in tone, including foul language and name-calling.

M.B. had agreed in an earlier civil restraint order not to enter N.L.'s home when she was not present, but resumed doing so during this five-month period, allegedly because the nanny and the children allowed or invited him into the house. The parties have a domestic violence history, and although not clear from the record, at least one, if not two, prior civil restraining orders.

In the course of the texts and emails, M.B. touched upon his unemployed status, emotional struggles, and homelessness. He was self-represented at the hearing.

During the trial, M.B. made several unsworn, lengthy statements while cross-examining witnesses. These statements included derogatory remarks about N.L. and the recitation of his grievances against her and her family going back to the day after their wedding nearly twenty years before. M.B. said, for example, that the officer who responded to an altercation that eventually resulted in the first TRO told him that he "felt terrible about what they were doing to [him], but . . . this is just what women do, and they do it because they can." When cross-examined by N.L.'s counsel, M.B. denied having been hospitalized

for mental health issues, insisting the hospitalization occurred so he could obtain medical treatment.

The judge did not find the "fairly lengthy stack of [emails], or text messages, rather, dating back to November of last year" to be harassment.[1] He found instead that the communications were domestic contretemps under Corrente v. Corrente, 281 N.J. Super. 243 (App. Div. 1995), and Peranio v. Peranio, 280 N.J. Super. 47 (App. Div. 1995). He drew a distinction between the texts and emails, finding that they were dissimilar, and that only the emails were offensive while the texts were inoffensive. The judge appeared to conclude that since N.L. attempted to appease M.B. or be conciliatory in some of her responses, that she was unaffected, and that therefore the messages were not harassing. Some tangentially touched upon M.B.'s contacts with the children, thus the judge found nothing unusual about them. Some were sent in the early morning hours, including the email mentioned in the complaint.

We reproduce a fraction of the messages for comparison:

---

[1] The judge barred N.L.'s mother from testifying about an incident not mentioned in the complaint. This was not correct—the parties' past history places current events into a much needed context, and their witnesses are permitted to testify about them. J.D. v. M.D.F., 207 N.J. 458, 470 (2011) (it is proper for a trial court to "elicit a fuller picture of the circumstances either to comply with the statutory command to consider the previous history, see N.J.S.A. 2C:25-29(a)(1)," or to inform the court of a defendant's intent).

4                                                                        A-4712-18T1

| **Language from email** | **Parallel text message** |
|---|---|
| You are the only true failure ....in the eyes of our children and certainly in the eyes of God...scratch that. Your God is the <u>God of Prada, Gucci, and Van Cleef and Arpels</u>. | You couldn't of gone about it in a more horrible way. I was good to you. Our family was everything. All I did was lose a job. There was a financial crisis. 600k guys lost their jobs. Not all their wives through [sic] them to the curb like trash.<br><br><u>Money</u>. There's more to [life] [N.L.]. . . . |
| YOU owe me an <u>apology</u> you crazy bitch. | <u>Apologize</u>. This is not sufficient<br><br>Sorry.<br><br>I'm leaving<br><br>I'm not at rink. I'm done being nice with all the shuttle services. You have always treated me terribly and your "<u>apology</u>" is inadequate, like usual. |
| Who the fuck do you think you are? You think your corporate <u>bullshit</u> means anything to me? lol. You are the worst of the worst . . . . and you can suck the dark underside of my ball sack. Fuck you [N.L.]! | You are a <u>bullshit</u> artist. |
| You have introduced OUR children to <u>how many men</u>? <u>3, 4, 5?</u> If you forgot no worries <u>I have their names.</u> | <u>Good luck on finding your fo[u]rth guy.</u> Be careful introducing our children again. <u>I am monitoring closely</u>.<br><br>You're averaging a minimum of one guy per year. Fun times? You will find out. You had it good. You should be ashamed. |

A-4712-18T1

| | |
|---|---|
| you are a <u>coward</u> and would NEVER TELL THE TRUTH. You are a lier [sic] and a coward. | Inform the children <u>coward</u>. I will not be driving this week. Make other plans. |
| You NEVER have said ONE NICE THING TO SAY ABOUT YOUR HUSBAND OF 15 years and the FATHER OF YOUR CHILDREN. The more you have shown me, post divorce, the more I realize you are just not a nice person. You are cold, calculated, and well, for lack of a better word, boring. And you are SO BORING. . . . You are the true failure, failure as a human being, and you will see this on judgment day, my dear. God knows what's in your heart . . . you can't fool HIM. No <u>androids</u> accepted there. Only HE knows the ice water in your veins. | You've continued to do nothing. You've shown me less than that. It's up to you to change. My guess, you are completely unable being anything else than an [sic] cold hearted <u>android</u>. |
| Maybe you should [o]f learned the "golden rule" from your <u>fat mother</u>. | Your <u>fat mother</u> is called and I'm not told. How dare you. |
| Shame on you. If you even loved me for a second you couldn't of been such a lying bitch. . . . but you showed your <u>true colors</u>. | We have never spoken in over 3 years. You had a responsibility and you failed not only me but [our] family. Texting will never be an appropriate medium going forward. You showed your <u>true colors</u> again. |

The judge found M.B.'s entries into N.L.'s home when she was not present to be excusable because the prior civil restraint the parties had entered into referred to N.L.'s former address. Since N.L. had moved to a different home, the judge opined that the order did not prevent M.B. from entering N.L.'s home uninvited. Further, M.B. had argued that the children or the nanny invited him

in. The judge also found that N.L.'s iteration to M.B. that, although she understood his reasons, she did not want him to enter her home to be ambiguous, and that thus M.B. could not have known he was unwelcome.

Now on appeal, N.L. raises the following points:

POINT I

THE DISMISSAL OF PLAINTIFF' S COMPLAINT FOR A FINAL RESTRAINING ORDER WAS "MANIFESTLY UNSUPPORTED BY OR INCONSISTENT WITH THE COMPETENT, RELEVANT AND REASONABLY CREDIBLE EVIDENCE AS TO OFFEND THE INTERESTS OF JUSTICE" AND SHOULD BE REVERSED.

A. Purpose Of The Domestic Violence Act Is To Prevent Emotional Abuse And Assure Victims Such As Plaintiff Of Their Right To Be Left Alone.

B. Perpetrators Of Domestic Violence Such As Defendant Do Not Comply With Expected Social Boundaries And Seek To Disturb And Interfere With The Victim's Right To Be Left Alone.

POINT II

THE COURT ERRED WHEN IT MISAPPLIED THE LAW BY FAILING TO EVALUATE THE PREDICATE ACTS OF DOMESTIC VIOLENCE UNDER THE TOTALITY OF THE CIRCUMSTANCES AND THE PAST HISTORY OF DOMESTIC VIOLENCE OF THE PARTIES AND ADDITIONALLY FAILED TO MAKE FINDINGS OF CREDIBILITY.

THE TRIAL COURT'S LEGAL CONCLUSIONS WERE NOT SUPPORTED BY THE FACTS ESTABLISHED AT TRIAL BY PLAINTIFF.

A.    It Is Incontrovertible That Plaintiff Proved By A Preponderance Of Evidence That Defendant Harassed Plaintiff When Defendant Sent Plaintiff A Three Page E-Mail At 2:00 A.M. On April 30, 2019, Containing Coarse And Offensive Language Directed At Plaintiff Causing Her Alarm.

B.    Plaintiff Proved By A Preponderance Of Evidence That Defendant Harassed Plaintiff When Defendant Sent Plaintiff Numerous Text Messages From November 2018 to March 2019, Containing Offensive and Abusive Language When Evaluated Under The Totality Of Circumstances Of The Past History Of Domestic Violence.

C.    Plaintiff Proved By A Preponderance Of Evidence That Defendant Harassed Plaintiff When Defendant Accessed And Copied Plaintiff's Private Text Messages With Her Boyfriend Causing Her Alarm.

D.    Plaintiff Proved By A Preponderance Of Evidence That Defendant Harassed Plaintiff When Defendant Berated Plaintiff In Public In Front of Parents And Faculty During Their Daughter's School Event Causing Her Alarm.

E.    Contrary To The Facts Adduced At Trial, The Court Misapplied The Law By Determining That The Defendant's Conduct Constituted Ordinary

8

Domestic Contretemps. Such A Conclusion Is Inapposite Where There Is A History Of Domestic Violence, The Parties Are Not Engaged In A Divorce Proceeding, And There Was Prior Physical Violence.

F. Plaintiff Proved By A Preponderance Of Evidence That Defendant Harassed Plaintiff When Defendant Entered Plaintiff's Home On April 24, 2019 And On Numerous Occasions Without Her Consent Causing Her Alarm. In Addition The Court Should Interpret Paragraph Five Of The Parties Civil Restraints Consent Order De Novo To Prohibit The Defendant From Entering Plaintiff's Current Address.

POINT IV

THE TRIAL COURT DECISION SHOULD BE REVERSED BECAUSE PLAINTIFF ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT SHE WAS ENTITLED TO A FINAL RESTRAINING ORDER TO PROTECT THE PLAINTIFF FROM FUTURE ACTS OF ABUSE.

The statute, N.J.S.A. 2C:33-4(a), defines harassment as the making of "a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm[.]" In subsection (c), harassment is also defined as a "course of alarming conduct or repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c).

9

Because we consider the proofs in this matter to have been so overwhelming as to readily meet the statutory definitions, we do not address N.L.'s points of error individually. N.L. established by a preponderance of the evidence that M.B. made numerous communications with the purpose of alarming or seriously annoying N.L., did so in an offensive manner, over a period of months, and occasionally during inconvenient hours. That nearly four years after the divorce, in message after message. M.B. continued to focus his communications on repeatedly insulting N.L., continuously arguing with her over minor issues, perseverating on the dissolution of the marriage and expressing rage over past events, is a course of alarming conduct.

Family courts are ordinarily afforded broad discretion in decision-making because it is assumed they "possess special expertise in the field of domestic relations." Cesare v. Cesare, 154 N.J. 394, 412 (1998). A ruling is only overturned if "manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). When a trial court is "'clearly mistaken' or 'wide of the mark'" an appellate court may "intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)

(quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). A trial court must have a rational basis for any decision. A.M.C. v. P.B., 447 N.J. Super. 402, 416 (App. Div. 2016).

Silver established a two-prong analysis requiring a judge to first ask if a plaintiff has proven, by a preponderance of the credible evidence, that defendant has committed one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a). Silver, 387 N.J. Super. at 125. If so, a judge is then required to determine whether an FRO is necessary to protect the victim. Id. at 126.

Here, the Family Part judge was clearly mistaken in finding M.B.'s messages were mere domestic contretemps. In the interest of justice, we find they constituted the predicate offense of harassment.

The need for an FRO was established by the pattern of abusive conduct, "a classic characteristic of domestic violence," corroborated by M.B.'s conduct in the courtroom. Id. at 128 (citing Cesare, 154 N.J. at 397-98). Not finding it necessary to deny authorship of the texts and messages, M.B. instead somewhat apologized for one communication, denying that he typically used obscenities when communicating with N.L. Instead of addressing the offensive language he used, M.B. instead launched into several lengthy diatribes justifying his conduct.

Evaluating the factors set forth in the statute, we are satisfied that an FRO is necessary to prevent further abuse. Silver, 387 N.J. Super. at 127. N.L. is absolutely entitled to be free of harassment from anyone. That the parties have been divorced for years, and M.B. nonetheless continues his angry hyperfocus on his former wife, speaks to the necessity to protect her by issuing an FRO.

Furthermore, judges are entitled to maintain order and control their courtrooms at their discretion. D.G. ex. rel. J.G. v. N. Plainfield Bd. of Educ., 400 N.J. Super. 1, 26 (App. Div. 2008) (citing Ryslik v. Krass, 279 N.J. Super. 293, 297 (App. Div. 1995)). A judge has the power to ensure that proceedings are conducted in a manner which neither inflicts additional injury on a victim, as arguably occurred here, nor harms the trial process. See State v. Castoran, 325 N.J. Super. 280, 285 (App. Div. 1999).

A judge must not allow a disruptive litigant "to profit from his own wrong[.]" Illinois v. Allen, 397 U.S. 337, 350 (1970). From our review of the transcript, it is apparent M.B. conducted himself in a manner that was disrespectful of N.L. and her family. It was also disrespectful of the domestic violence process as a whole.

We do not ignore the difficulty of conducting a bench trial with self-represented litigants. But parties have the right to expect to be treated with

respect and dignity when in the courtroom. See J.D., 207 N.J. at 481. The judge had a host of techniques available to prevent what occurred here, which was that M.B. dominated the courtroom to the detriment of N.L., who had come to court armed with significant proofs, looking for protection. The judge should have exercised his discretion so as to ensure the proceedings did no further harm to the complainant.

Given the added injury no doubt inflicted on N.L. because of the manner in which the proceedings were conducted, we choose to exercise original jurisdiction. Original jurisdiction is employed only where the record is adequate, making a remand unnecessary, and supports only one conclusion. See New Jerseyans for Death Penalty Moratorium v. D.O.C., 370 N.J. Super. 11, 18 (App. Div. 2004); Ladenheim v. Klein, 330 N.J. Super. 219, 224 (App. Div. 2000). It is exercised in order to avoid extremely burdensome and unnecessary litigation. Price v. Himeji, LLC, 214 N.J. 263, 294-96 (2013).

M.B. did not challenge authorship of the texts and emails introduced into evidence, making a remand unnecessary; the record supports only one conclusion. To require N.L. to go through the trial process again would be extremely burdensome to this domestic violence litigant. Having reached the conclusion that both prongs of Silver were met, i.e. predicate acts and a need to

protect, we remand for the ministerial purpose of the entry of an FRO barring M.B. from contact with N.L., her mother, stepfather, and the children's caretakers as named in the complaint.

Reversed, remanded for the entry of an order in accord with this decision.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4712-18T1