**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1744-22

CHRISTINE IVALIOTIS,

    Plaintiff-Appellant,

v.

COVERED BRIDGE CAPITAL,
LLC, DEAN LOPSON, and D.J.
KEPLER,

    Defendants-Respondents.

_____

Argued September 30, 2024 – Decided October 11, 2024

Before Judges Sabatino, Gummer, and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3147-21.

Edward Hanratty argued the cause for appellant.

Raul J. Sloezen argued the cause for respondents.

PER CURIAM

    This matter arises out of three successive litigation funding agreements

entered into between defendant Covered Bridge Capital, LLC ("CBC") and plaintiff Christine Ivaliotis in 2016, 2018, and 2019. Pursuant to those agreements, plaintiff received a total of $9,600.00 from CBC to help fund her pursuit of personal injury cases arising out of an accident. After recovering the first settlement in the personal injury cases, plaintiff paid CBC in full what she owed, including interest and fees, under the first two agreements. After recovering a second, and final, settlement in the personal injury cases, she obtained from the bankruptcy court a discharge of the funds that she owed CBC under the third agreement. She then filed the present lawsuit against CBC and other individuals.

Plaintiff contends CBC violated the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -227, and the Truth in Consumer Contract Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 to -18, by allegedly engaging in fraudulent lending practices and impermissibly purchasing an interest in prejudgment personal injury proceeds. The trial court granted summary judgment dismissing plaintiff's claims against CBC, and this appeal followed.

We affirm, principally because plaintiff has not shown she sustained a compensable "ascertainable loss" as the result of a CFA violation by CBC, nor does she qualify as an "aggrieved consumer" under the TCCWNA.

2

We summarize the following pertinent facts from the record, which we have evaluated in a light most favorable to plaintiff as the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (applying de novo on appellate review the same legal standards that govern summary judgment motions in trial courts).

Lawsuit Funding Agreements

Plaintiff suffered personal injuries as the result of an August 2015 motor vehicle accident. She filed a negligence case against the vehicle's driver, as well as an underinsured motorist ("UIM") case against her auto insurer. While her lawsuits were pending, plaintiff entered into a series of three agreements to obtain litigation funding from CBC.

On June 23, 2016, plaintiff and CBC entered into the first agreement, pursuant to which CBC paid plaintiff $1,200.00. Payment to CBC was contingent on plaintiff obtaining a recovery in her personal injury cases. Under the contract terms, the amount owed to CBC was subject to an annual accrual interest rate of 33%, consisting of 8.25% compounded every three months, capped at 42 months. Plaintiff accepted those terms against the advice of her

then-attorney, who thought the interest rate was too high.

Two years later, on August 22, 2018, plaintiff entered a second agreement with CBC, in which CBC paid her an additional sum of $2,900.00. The amount owed to CBC was subject to an annual accrual rate of 24%, consisting of 6% compounded every three months, capped at 42 months. Payment to CBC was likewise subject to plaintiff recovering money in her personal injury litigation.

Eventually, plaintiff settled her personal injury case against the driver for $15,000.00. Thereafter, on January 15, 2019, plaintiff voluntarily paid CBC $7,043.92, which was deemed payment in full for what plaintiff owed under the first two funding agreements. Of the $7,043.92 paid to CBC, $2,943.92 comprised interest and fees.

Meanwhile, plaintiff continued to pursue her UIM claim against her auto insurer. To help finance the litigation of that claim, on February 1, 2019, plaintiff entered into a third agreement with CBC, receiving $5,500.00. The amount owed to CBC under this final agreement was subject to an annual accrual rate of 32% (16% compounded every six months, capped at 42 months).

The contracts included several representations, including, but not limited to the following:

> "[CBC] agree[s] to purchase from [plaintiff], and
> [plaintiff] agree[s] to sell to [CBC], a portion of [her]

Proceeds" referring to the proceeds from her "claim or lawsuit, including appeals, arising from injuries [plaintiff] suffered in a motor vehicle accident on or about August 6, 2015."

"If [plaintiff's personal injury] Claim fails, [plaintiff] owe[s] [CBC] no money."

"This is a non-recourse transaction."

"[Plaintiff] ha[s] not filed or anticipate[s] filing for Bankruptcy protection. However, if at some point during the life of [plaintiff's] Claim, [plaintiff] do[es] file for Bankruptcy protection, [plaintiff] hereby agree[s] to refund [CBC] the Amount Purchased from that portion of the Proceeds which are by law personally exempt from Bankruptcy; and, [plaintiff] hereby authorize[s] and direct[s] [her] attorney or the bankruptcy trustee to make payment for said refund directly to [CBC]."

"If a binding judicial authority rules this Agreement constitutes a loan of money, then the interest rate being charged for this transaction shall be equal to the maximum interest rate allowed by law."

"A necessary condition of this Agreement is that [plaintiff] be represented by a licensed attorney."

"CBC shall have no right to and will not make any decisions regarding the handling of [plaintiff's] claim or any settlement or resolution of [plaintiff's] claim and that the right to make those decisions remains solely with [plaintiff] and [her] attorney."

"[Plaintiff's] attorney has also emphasized that this type of transaction can be expensive and therefore should be entered into only out of necessity."

5

Following an arbitration in February 2021, plaintiff settled her UIM claim for $45,000.00. She did not disburse any portion of that second settlement to CBC.

Meanwhile, plaintiff had been in bankruptcy proceedings since July 2016, the details of which we need not elaborate here. The only key aspect for our purposes is that on July 29, 2021, plaintiff obtained an order from the Bankruptcy Court, discharging her entire remaining debt to CBC. Having been served with that discharge order, CBC has disclaimed any effort to collect the $5,500.00, plus interest and fees, which plaintiff owed under the third contract.

In totality, plaintiff obtained $9,600.00 from CBC and paid CBC only $7,043.92 for the 2016 and 2018 agreements, resulting in her obtaining a net positive gain from the three transactions of $2,566.08.

This Case

On September 13, 2021, plaintiff filed the complaint in the present matter against CBC and CBC officers Dean Lipson and D.J. Kepler. In January 2022, plaintiff filed an amended complaint against the same defendants. In the amended complaint she made the following allegations: Count I—violation of the New Jersey Consumer Finance Licensing Act N.J.S.A. 17:11C-1 to -44, claiming that "[d]efendants lent money and charged interest and fees in this state

6

when they are not licensed to do so under N.J.S.A. 17:11C-41" and that the "interest charged by the defendants . . . exceeded that permitted under New Jersey Usury laws"; Count II—racketeering activity under N.J.S.A. 2C:41-1; Count III—violation of the TCCWNA; Count IV—violation of the CFA; and Count V—alleging the transaction "in 2016 is barred by New Jersey law and was produced by deception about its legality and enforceability and designed to deprive plaintiff of her property." Notably, plaintiff filed a certification claiming she had not listed CBC as a creditor in her bankruptcy case because she allegedly understood the contracts to involve the purchase of an asset, not a loan.

Defendants moved to dismiss plaintiff's claims. In September 2022, the trial court dismissed Counts I and II, reasoning that CBC is not a lender and the contracts were not usurious. The court initially denied the dismissal of Counts III, IV, and V, allowing plaintiff the opportunity to pursue discovery and further define the cause of action in Count V.

Summary Judgment

Subsequently, plaintiff moved for partial summary judgment against CBC as to liability on Count III. Defendants cross-moved for summary judgment on Counts III, IV, and V. Plaintiff voluntarily dismissed Count V.

In an order dated December 23, 2022, the trial court denied plaintiff's motion for summary judgment and granted defendants' cross-motion for summary judgment, dismissing all remaining claims. The court reasoned that the transactions with CBC were not loans, and lawsuit financing agreements assigning an interest in the proceeds of a personal injury claim are allowed under New Jersey law. Hence, the court found CBC did not commit an "unconscionable commercial practice" within the meaning of the CFA.

The court also held that plaintiff was not an "aggrieved consumer" under the TCCWNA and had not suffered any "ascertainable loss" under the CFA because she benefited from what the court described as a "windfall" of $2,556.08 by discharging through bankruptcy the remaining amount she owed to CBC.[1]

The court denied plaintiff's motion for reconsideration. This appeal ensued.

Plaintiff argues that CBC participated in three forms of unlawful conduct that violated the CFA and the TCCWNA: (1) CBC made loans of less than $50,000.00 without a license, in alleged violation of N.J.S.A. 17:11C-1; (2) CBC

---

[1] Defendants had also moved for summary judgment based upon the grounds of equitable estoppel, fraud, and unclean hands, but the court did not reach these arguments as it dismissed the complaint on other grounds.

A-1744-22

committed usury by providing loans with interest rates in excess of what is permitted under N.J.S.A. 2C:21-19; and (3) CBC illegally purchased an assignment of an interest in a prejudgment personal injury claim.

Plaintiff further claims she suffered an ascertainable loss under the CFA and is an aggrieved consumer under the TCCWNA because she paid CBC $7,043.92 for the 2016 and 2018 contracts, including substantial interest and fees.

In response, defendants assert the contracts are contingent, non-recourse advancements that do not constitute loans subject to the CFA. They further argue that obtaining an assignment interest in the proceeds of a personal injury claim is permitted by law. Further, they contend plaintiff did not suffer any ascertainable loss, as she is net positive $2,566.08 from her three transactions with CBC.

## II.

Our analysis of these issues is straightforward.

To present a prima facie claim under the CFA, a plaintiff must establish three elements: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Cox v. Sears Roebuck & Co., 138 N.J. 2, 24 (1994). We

recognize that, given the Act's remedial purposes, courts should construe its provisions broadly and liberally in favor of consumers. Papergraphics Intern., Inc. v. Correa, 389 N.J. Super. 8, 12 (App. Div. 2006).

A critical prerequisite for maintenance of a private action to remedy a CFA violation is that "[the] plaintiff must present a claim of ascertainable loss." Weinberg v. Sprint Corp., 173 N.J. 233, 251 (2002). Ascertainable loss is a "standing" requirement. Ibid.

A plaintiff is required to "plead a claim of ascertainable loss that can survive a motion for summary judgment." Id. at 253. Once this threshold standing requirement is satisfied, the plaintiff can pursue "all available remedies . . . even if the plaintiff ultimately loses on his damage claim but does prove an unlawful practice under the Act." Ibid.

In Thiedemann v. Mercedes–Benz USA, LLC, 183 N.J. 234, 248 (2005), our Supreme Court instructed that, under the CFA, "a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." (Emphasis added). An ascertainable loss under the CFA is one that is "quantifiable or measurable," not "hypothetical or illusory." Ibid. A plaintiff can establish an ascertainable loss by demonstrating either an out-of-pocket loss or a deprivation of the benefit of one's bargain. Ibid. "Out-

of-pocket damages represent the difference between the price paid and the actual value received" when "the products purchased were worthless or unsuitable for their intended use" and plaintiff "will spend additional funds following their purchases to make the items usable for their intended purpose." Robey v. SPARC Grp. LLC, 256 N.J. 541, 548, 560 (2024). Ascertainable loss need not be exclusively limited to an "out-of-pocket loss to the plaintiff." Thiedemann, 183 N.J. at 248. "An estimate of damages, calculated within a reasonable degree of certainty will suffice to demonstrate an ascertainable loss." Id. at 249.

"In determining the sufficiency of plaintiff's assertions about an ascertainable loss, [the appellate court is] required to consider the scope of [plaintiff's] action." Perkins v. DaimlerChrysler Corp., 383 N.J. Super. 99, 106 (App. Div. 2006). We have done so here, having described the scope of plaintiff's claims above.

Critically, ascertainable loss should be calculated at the time the complaint is filed. See D'Agostino v. Maldonado, 216 N.J. 168, 194 (2013) (finding that "[i]n some circumstances, if the defendant or a non-party takes action to ensure that the plaintiff sustains no-out-of-pocket loss or loss of value prior to litigation, then plaintiff's CFA claim may fail") (emphasis added); see also Perkins, 383 N.J. Super at 106 (finding that for the consideration of whether

there was ascertainable loss related to a vehicle issue, the court must consider whether plaintiff generated any "actual out-of-pocket losses during the warranty period, or <u>by the time the complaint was filed</u> . . . or even when [plaintiff] responded to the motion to dismiss filed nearly one year after the commencement of the action") (emphasis added).

Here, the time for measurement of ascertainable loss is September 13, 2021, when plaintiff filed her complaint against defendants. As of that date, plaintiff did not owe defendants any money. In fact, as the trial court noted, plaintiff had reaped a net gain of $2,566.08. Her alleged "loss" from her dealings with CBC was non-existent.

Plaintiff argues that we should ignore the gain she made from the third funding agreement and focus instead on the nearly $3000.00 she paid in combined interest and fees under the first and second agreements. Even if we viewed her claim in that myopic fashion, plaintiff still has not set forth an ascertainable loss caused by a CFA violation.

Plaintiff's CFA claim conceptually hinges on her assertion that her funding agreements entailed "loans" that required CBC to be licensed by the Department of Banking and Insurance and subjected CBC to the interest rate caps imposed by consumer loan usury laws. Yet, this premise is wrong. As the

trial court correctly noted, litigation funding agreements have been legally classified as not being loans.

A loan is defined as "a grant of something for temporary use; A thing lent for the borrower's temporary use; a sum of money lent at interest." Black's Law Dictionary, p. 1120 (2024). The recipient of the loan must be unconditionally obligated to make repayment. Karns Prime & Fancy Food, Ltd. v. C.I.R., 494 F.3d 404 (3d Cir. 2007).

By contrast, Black's Law Dictionary defines "litigation funding" as "[a]n agreement between a litigant and third party to finance a lawsuit in exchange for a share of any recovery. Litigation funding is a type of investment in a lawsuit, typically for the plaintiff." Black's Law Dictionary, p. 1117 (2024) (emphasis added).

This distinction between loans and the proceeds of litigation funding agreements has been judicially recognized. In Dopp v. Yari, 927 F. Supp. 814 (D.N.J. 1996), the district court expressly addressed "the question of the enforceability of a contract for the financing of litigation in exchange for a division of the final proceeds." Id. at 814-15. The parties in Dopp entered into three litigation financing agreements. After plaintiff was provided with over $700,000.00 in financing, he claimed the agreements violated the New Jersey

usury statute for fees associated with loans, specifically arguing "that the agreement in question is not an agreement establishing the division of proceeds from a joint undertaking but, rather, a usurious loan in excess of the legal limit." Id. at 818, 820. The district court concluded "the transaction had all the markings of a joint undertaking and not a loan." Id. at 824.

In this same vein, the Local Civil Rule of the United States District Court addressing the disclosure to defendants of such third-party funding arrangements describes a litigation financing agreement as a "non-recourse . . . contingent financial interest" that is "not in the nature of a personal or bank loan, or insurance." L. Civ. R. 7.1.1 (emphasis added).

Plaintiff's argument, that we must treat her transactions with CBC as loans, is belied by her own certification regarding her bankruptcy filing, in which, as we noted above, she attested they were not loans. Plaintiff is judicially estopped from having it both ways. See Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App. Div. 2000) (judicial estoppel generally precludes a party from advocating "a position contrary to a position it successfully asserted in the same or a prior proceeding").

Relying on older case law predating our state's modern constitution, plaintiff argues that litigation funding agreements must be void and deemed an

unconscionable commercial practice because a personal injury action is not assignable. However, our courts more recently have determined that an assignment of proceeds arising from a civil judgment or settlement is permissible. Ladenheim v. Klein, 330 N.J. Super. 219 (App. Div. 2000); Cronin v. McKim-Gray, 353 N.J. Super. 127 (App. Div. 2002); see also N.J.S.A. 2A:25-1 (declaring that "all judgments and decrees recovered in any of the courts of this State or of the United States . . . and all choses in action arising on contract shall be assignable").

Here, CBC was contingently assigned a right to be paid out of a tort or UIM recovery by plaintiff if, and only if, one was obtained. CBC was not assigned control of those lawsuits or claims. Plaintiff remained in control of her cases.

Furthermore, the Advisory Committee on Professional Ethics issued an opinion in 2001 instructing that "a lawyer may ethically refer a client to a factor [litigation funding company] concerning a possible advance against an anticipated personal injury judgment or settlement." Opinion 691, 163 N.J.L.J. 220 (2001). We agree with defendants that it would be "absurd and illogical" to have an "arm of the Court" permit an attorney to assist a client in an "illegal" act, i.e., "refer a client to a funding company, review the documents and sign

15

them, and then have the [c]ourt permit a plaintiff to sue the funding company, while exonerating the attorney."

In short, the litigation funding agreements at issue here were not "loans" subject to consumer licensing and usury laws. Nor were they "unconscionable commercial practices" violative of the CFA. Any alleged "ascertainable loss" sustained by plaintiff was not caused by a CFA violation.

We reach a comparable conclusion as to plaintiff's TCCWNA claim. To state a claim under the TCCWNA, plaintiff must establish: (1) defendant is a seller, lessor, creditor, <u>lender</u>, bailee, or assignee; (2) who, in writing, entered into a consumer contract or gave or displayed a consumer warranty, notice, or sign; (3) containing a provision that violates a consumer's clearly established legal right; and (4) plaintiff is an aggrieved consumer. N.J.S.A. 56:12-15 (emphasis added); <u>Robey</u>, 256 N.J. at 563.

As to that last element, the Supreme Court in <u>Robey</u> recently clarified that the term "aggrieved consumer" under the TCCWNA is harmonious with the concept of a plaintiff who suffers an "ascertainable loss" under the CFA. <u>Id</u>. at 549. Without an ascertainable loss under the CFA, alleged violations of the CFA cannot form the basis of a violation of a "clearly established legal right" under the TCCWNA. <u>Id.</u> at 551. If a plaintiff's alleged harm under the

16

TCCWNA is premised on the same allegations as a CFA claim, the court must find the plaintiff incurred an ascertainable loss of money or property under the CFA to move forward with the TCCWNA claim. Id. 564-65.

Based on the analysis we set forth above on plaintiff's CFA claim, her TCCWNA claim likewise fails for lack of viable proof of an ascertainable loss caused by a consumer fraud violation. She made money from her dealings with CBC, with the help of a bankruptcy discharge after she settled her personal injury cases for sums exceeding what she owed CBC. She took advantage of the circumstances, to CBC's detriment. She lacks standing to call herself an "aggrieved consumer," both as a matter of law, a matter of equity, and common sense.

We have considered all other arguments raised by plaintiff and they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17